659 S.E.2d 263

E. Bruce MORGAN, Appellant,

v.

SOUTH CAROLINA BUDGET AND CONTROL BOARD and
South Carolina Retirement Systems, Respondents.

No. 4356.

Court of Appeals of South Carolina.

Heard Feb. 5, 2008.
Decided March 13, 2008.

314

William E. Whitney, Jr., of Union, for Appellant.

Kelly H. Rainsford and David K. Avant, both of Columbia, for Respondents.

CURETON, A.J.

In this action to determine the cost to purchase non-qualified service credit (Non–Qualified Service) under South Carolina Retirement Systems (Retirement Systems), E. Bruce Morgan appeals the order of the Administrative Law Court (ALC) requiring the purchase price to be calculated based on Morgan's highest salary. We affirm.

## FACTS

From 1982 to 1991, Morgan worked for the State of South Carolina and earned eight years of service credit in Retire-

ment Systems. Morgan later withdrew these contributions. From 1991 to 1997, Morgan worked for the State of North Carolina and earned public service credit toward his retirement account (N.C. Public Service). Morgan rejoined Retirement Systems in November 2000 when he became Mayor of the City of Union, South Carolina.

In 2004, Morgan sought to increase his service credit in Retirement Systems. On August 20, 2004, Morgan submitted a request to Retirement Systems to purchase credit for his N.C. Public Service and additional credit equal to the amount he had previously earned between 1982 and 1991 for his South Carolina service, but had later withdrawn (Withdrawal Service). Retirement Systems acknowledged receipt of his request and informed him processing might take up to ninety days. On October 4, 2004, Retirement Systems notified Morgan he could purchase Withdrawal Service credit for $18,995.95 until April 2, 2005. After Retirement Systems received verification of Morgan's N.C. Public Service, it notified Morgan he could purchase N.C. Public Service credit for $35,562.91 until April 16, 2005.

Soon thereafter, Morgan visited Retirement Systems in person to discuss how it had calculated the price of his N.C. Public Service credit. During this visit, Morgan also inquired about purchasing Non–Qualified Service credit. Retirement Systems informed Morgan it had based the price of his Public Service credit on the $33,592.00 salary indicated in the Withdrawal Service invoice. Furthermore, Retirement Systems advised Morgan if he elected not to buy Withdrawal Service first, it could recalculate the purchase price of his Public Service credit and Non–Qualified Service credit using his then-current salary of $6,610.00. Retirement Systems stated Morgan could purchase up to five years of Non–Qualified Service based on the $6,610.00 salary. Retirement Systems did not advise Morgan he was currently not qualified to purchase Non–Qualified Service.[1]

---

1. It appears Retirement Systems was unaware at this time that Morgan's salary would increase within a few months. Had Morgan declined to purchase Withdrawal Service credit, Retirement Systems could not have used his former career-high salary of $33,592 to calculate the purchase price of other types of credit. Consequently, had Morgan continued to work at the $6,610.00 salary until he earned five

Subsequently, Morgan submitted a written request to purchase Non–Qualified Service credit and N.C. Public Service credit based on the $6,610.00 salary. Morgan's letter specified he would purchase Withdrawal Service credit later. Pursuant to this letter, Retirement Systems recalculated the price of Morgan's N.C. Public Service credit as $6,998.03. The October 28, 2004, invoice for Morgan's N.C. Public Service credit included a postscript indicating "you are not eligible to purchase non qualified service until you have reached 5 years of earned service." Four weeks later, Morgan purchased N.C. Public Service credit from Retirement Systems.

On November 29, 2004, Morgan again called Retirement Systems, which erroneously advised him he could purchase Non–Qualified Service credit after his N.C. Public Service credit purchase posted. Nine days later, Retirement Systems corrected this error by advising Morgan he must have five years of earned service before he could purchase Non–Qualified Service credit. Morgan stated he would first purchase his Withdrawal Service credit, which would satisfy the earned-service requirement, and would later submit his request to purchase Non–Qualified Service credit. However, instead of purchasing Withdrawal Service credit first, Morgan visited Retirement Systems and requested to purchase Non–Qualified Service credit. Despite the fact Morgan had already completed the purchase of N.C. Public Service credit, Retirement Systems instructed Morgan to complete a new written request to purchase that credit, and he did so.

On December 14, 2004, Morgan called Retirement Systems and inquired whether he could purchase just enough Withdrawal Service credit to make him eligible to purchase Non–Qualified Service credit. Retirement Systems informed him he could do so, but if he did, he would be unable to purchase the remainder of his Withdrawal Service until the following fiscal year.[2] Morgan submitted a written request to Retirement Systems to purchase Withdrawal Service credit, providing Retirement Systems with information about the Smith Barney IRA account he intended to use to fund the purchase. Two

---

years of retirement credit, Retirement Systems could have calculated the cost of Non–Qualified Service credit using his $6,610.00 salary.

**2.** *See* S.C.Code Ann. § 9–1–1140(K).

weeks later, Retirement Systems notified Morgan the information he had provided was insufficient because it failed to indicate whether the Smith Barney IRA consisted of pretax funds. On January 10, 2005, Morgan started a new state job at a career-high salary of $89,000.00.

Morgan did not contact Retirement Systems again until February 7, 2005, when he inquired about purchasing Withdrawal Service credit using rollover funds from his Wachovia account. In March 2005, Morgan purchased Withdrawal Service credit pursuant to the October 4, 2004, invoice using funds from a different account than before. Thereafter, Retirement Systems informed Morgan that Wachovia had overpaid, and Morgan requested Retirement Systems apply the overpayment to his purchase of Non–Qualified Service credit. When Morgan learned the cost, he declined to purchase the Non–Qualified Service credit. On April 21, 2005, Retirement Systems refunded the overpayment to Wachovia for deposit in Morgan's account.

In May 2005, with no other service available for Morgan to purchase, Retirement Systems confirmed the cost of Non–Qualified Service credit as $155,750.00, based on his $89,000.00 salary. Morgan appealed in a letter to the Director of Retirement Systems. Retirement Systems issued a final agency determination confirming $155,750.00 as the cost of Morgan's Non–Qualified Service credit. Morgan contested and requested the ALC hear this matter. The ALC affirmed Retirement Systems' final agency determination. This appeal followed.

## STANDARD OF REVIEW

Review of a decision by the ALC is confined to the record. S.C.Code Ann. §§ 1–23–380(A)(4), 1–23–610(C) (Supp. 2006). "The findings of the agency are presumed correct and will be set aside only if unsupported by substantial evidence." *Kearse v. State Health & Human Servs. Fin. Comm'n*, 318 S.C. 198, 200, 456 S.E.2d 892, 893 (1995). " 'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981).

## LAW/ANALYSIS

Morgan argues the ALC erred in declining to estop Retirement Systems from calculating the cost of Morgan's Non–Qualified Service credit using his current, career-high salary because Retirement Systems' misinformation and delays prevented Morgan from completing his purchase before his salary increased. We disagree.

Under South Carolina law, active members of Retirement Systems may establish service credit for public service, non-qualified service, and previously withdrawn service by making payments into the system. S.C.Code Ann. § 9–1–1140 (Supp. 2007). Furthermore:

> An active member who has five or more years of earned service credit may establish up to five years of nonqualified service by making a payment to the system to be determined by the board, but not less than thirty-five percent of the member's current salary or career highest fiscal year salary, whichever is greater, for each year of credit purchased.

§ 9–1–1140(E). Of the three types of purchasable service credit listed above, only previously withdrawn service credit may substitute for earned service. § 9–1–1140(J).

 Misrepresentations by government officials acting within the proper scope of their authority may subject the government to estoppel. *McCrowey v. Zoning Bd. of Adjustment of City of Rock Hill,* 360 S.C. 301, 305–06, 599 S.E.2d 617, 619 (Ct.App.2004) (citing *S.C. Coastal Council v. Vogel,* 292 S.C. 449, 453, 357 S.E.2d 187, 189 (Ct.App.1987)). However, estoppel is not appropriate where a government official or employee with limited authority erroneously provides advice beyond the scope of his authority. *McCrowey,* 360 S.C. at 305, 599 S.E.2d at 619 (citing *DeStefano v. City of Charleston,* 304 S.C. 250, 257–58, 403 S.E.2d 648, 653 (1991)). Estoppel will not lie against a government entity where a government employee gives erroneous information in contradiction of statute. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 415–16, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Simply stated, equity follows the law. *Smith v. Barr,* 375 S.C. 157, 164, 650 S.E.2d 486, 490 (Ct.App.2007).

 Estoppel based on erroneous advice is inappropriate under the facts of this case. Retirement Systems administers

South Carolina's state-employee retirement plans. Providing plan members with correct information concerning their rights and benefits is therefore within Retirement Systems' purview. Morgan argues Retirement Systems misled him concerning his eligibility to purchase Non–Qualified Service. However, eligibility to purchase service credit is purely statutory. Retirement Systems had no discretion to determine an individual member's eligibility and thus lacked authority to contradict the statute. Therefore, estoppel is improper here under both *McCrowey* and *Richmond.*

 Morgan further argues Retirement Systems should be estopped because Retirement Systems' delays in processing his requests for service credit prevented him from effecting the purchases before his salary increased. The doctrine of equitable estoppel may be enforced in a court of law as well as in equity matters. *Strickland v. Strickland,* 375 S.C. 76, 85, 650 S.E.2d 465, 471 (2007). "The party asserting estoppel bears the burden of establishing all its elements." *Estes v. Roper Temp. Servs.,* 304 S.C. 120, 122, 403 S.E.2d 157, 158 (Ct.App.1991). A government entity may be equitably estopped in matters that do not affect the due exercise of its police power or the application of public policy. *Grant v. City of Folly Beach,* 346 S.C. 74, 80, 551 S.E.2d 229, 232 (2001). Estoppel may apply against a government agency. *Id.* A party asserting estoppel against the government must prove "(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) justifiable reliance upon the government's conduct, and (3) a prejudicial change in position." *Id.* Absent even one element, estoppel will not lie against a government entity. *Id.* However, citizens are presumed to know the law and are charged with exercising "reasonable care to protect [their] interest[s]." *Smothers v. U.S. Fidelity and Guar. Co.,* 322 S.C. 207, 210–11, 470 S.E.2d 858, 860 (Ct.App.1996).

 Morgan's estoppel argument fails on the first two elements. First, Morgan argues he lacked knowledge because Retirement Systems misled him as to the truth of his situation by failing to inform him he could purchase Non–Qualified Service credit only after he purchased Withdrawal Service credit. Furthermore, Morgan argues Retirement Systems

improperly encouraged him to apply to purchase Non–Qualified Service credit immediately after his purchase of N.C. Public Service credit posted. However, section 9–1–1140 clearly outlines eligibility requirements for each type of service.[3] Therefore, Morgan had the means to discern for himself whether he was eligible to purchase service credit, and thus, he failed to satisfy the first element.

For the second element, justifiable reliance, Morgan argues he missed his "deadline" because he relied on Retirement Systems to guide him and process his requests timely, but Retirement Systems instead misinformed him and caused delays. However, Retirement Systems misinformed Morgan on only one occasion, correcting its error within nine days. No evidence suggests Morgan acted on this misinformation until after Retirement Systems had correctly informed him of the need to purchase Withdrawal Service credit first.[4] Furthermore, no evidence suggests Retirement Systems was aware of any "deadline." Retirement Systems noted Morgan was confident he would be re-elected as mayor and wanted to purchase additional service before he got a "real job." However, we do not find these notations sufficient to establish Retirement Systems knew Morgan's salary would increase significantly on January 10, 2005. Rather, Retirement Systems appears to have handled a multitude of Morgan's re-

---

3. Morgan attempts to analogize *Landing Dev. Corp. v. City of Myrtle Beach*, 285 S.C. 216, 329 S.E.2d 423 (1985), in which estoppel was appropriate where an individual had relied upon the City's consistent but improper representations concerning a zoning ordinance, and the City later sought to enforce the ordinance. However, that case is distinguishable from the one at bar because Morgan at all times had the ability to review the statute for himself. Moreover, no evidence indicates Retirement Systems consistently misinterpreted the statute.

4. Morgan often repeats Retirement Systems' statement, "You will not be penalized due to our delay." A reasonable person might expect this statement to preclude Retirement Systems from imposing any late-filing penalties due to processing delays. However, Morgan seems to interpret it as an unlimited promise by Retirement Systems to indemnify him against any and all changes that might occur during the pendency of his request, including those changes within his control. We disagree with this view. Morgan undoubtedly knew the effective date and amount of his new salary and had the power to decline to accept it. He elected to accept it in spite of any consequences to his cost of purchasing retirement credit.

quests, both for information and for action, in a reasonably timely manner. Lacking any evidence he justifiably relied on the misinformation, Morgan failed to satisfy the second element as well.

For the final element, a prejudicial change in position, the record reflects Morgan's salary increase permanently raised his cost of purchasing additional service credit. This element alone is satisfied. However, without all three elements, Morgan's estoppel argument fails.

Equitable estoppel against a government entity requires successful proof of all three elements. Morgan successfully proved a prejudicial change in position, but he failed to prove either lack of knowledge or justifiable reliance. Therefore, estoppel against Retirement Systems is inappropriate in this matter.

### CONCLUSION

Retirement Systems should not be estopped from using Morgan's January 10, 2005, salary to calculate the cost of Non–Qualified Service credit, because Morgan fails to satisfy two of the three required elements for estoppel against a government entity. Morgan has proved neither lack of knowledge nor justifiable reliance. Without proving all three elements, Morgan is not entitled to estoppel. Accordingly, the order of the ALC is

**AFFIRMED.**

HEARN, C.J., and PIEPER, J., concur.