692 S.E.2d 499

**QUAIL HILL, LLC, Respondent,**

v.

**COUNTY OF RICHLAND, South Carolina, Petitioner.**

**No. 26788.**

Supreme Court of South Carolina.

Heard Jan. 7, 2010.

Decided March 22, 2010.

224

Andrew F. Lindemann, William H. Davidson, II, Michael B. Wren, of Davidson & Lindemann, of Columbia, for Petitioner.

Charles E. Carpenter, Jr., Carmen V. Ganjehsani, Sharon Plyler Besley, of Carpenter Appeals and Trial Support, of Columbia, and Clifford O. Koon, Jr., Paul D. deHolczer, Robert L. Brown, of Moses Koon and Brackett, of Columbia, for Respondent.

Justice BEATTY.

In this zoning dispute case, this Court granted Richland County's (County's) petition for a writ of certiorari to review the decision of the Court of Appeals in *Quail Hill, LLC v. County of Richland, South Carolina,* 379 S.C. 314, 665 S.E.2d 194 (Ct.App.2008), in which the Court of Appeals affirmed in part and reversed in part the grant of summary judgment in favor of County as to Quail Hill, LLC's (Quail Hill's) claims stemming from the issuance of inaccurate zoning information by County employees. We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL HISTORY

In late 2002, Quail Hill sought to acquire a 72.5 acre parcel of property in Richland County to develop a manufactured-home subdivision. To assist in procuring this property, Quail Hill contacted Phillip Aylan Brown, Jr., a licensed real estate broker, and authorized him to act as its agent. In January 2003, Brown met with Carl Gosline, the Richland County Subdivision Coordinator, to determine whether the parcel was suitable for the development of manufactured housing. According to Brown, Gosline told him the parcel was zoned RU (rural) based on information obtained from Gosline's computer. Brown also testified the tax bill from the Tax Assessor's office listed the parcel's zoning as RU. A zoning classification of RU allows the property to be developed as a manufactured-home subdivision.

On March 13, 2003, Quail Hill purchased the property and then surveyed, platted, and prepared it for development. In September 2003, Quail Hill filed an application with the Richland County Planning Commission ("Planning Commission") for site plan approval for the development of the subject

property as a twenty-lot, manufactured-housing subdivision. On October 6, 2003, the Richland County Development Services Department issued a report for the Planning Commission in which it recommended approval of Quail Hill's subdivision plan. Subsequently, the Planning Commission voted unanimously to approve Quail Hill's site plan for the property. In turn, Quail Hill began marketing and selling lots for the subdivision. According to Quail Hill, five lots were then sold, with manufactured homes being installed on two of the lots.

In November 2004, neighboring landowners contacted their County Council representative and asked him to attend a meeting regarding Quail Hill's subdivision. Geonard Price, the County's Zoning Administrator,[1] accompanied the County Council member to the meeting, where the neighbors inquired about zoning restrictions and expressed opposition to Quail Hill's development. Following this meeting, Price consulted the County's Official Zoning Map[2] and found the subject property was zoned RS-1, a residential classification that prohibits manufactured homes.

Based on the RS-1 zoning classification, County staff informed Quail Hill on November 4, 2004, that it was prohibited from developing manufactured housing on the property. On November 17, 2004, Price issued an order requiring Quail Hill to cease development of the subdivision except for those uses permitted under the RS-1 zoning district.

Following this order, Quail Hill representatives met with County staff who revealed that Gosline had erroneously advised Quail Hill the property was zoned RU, and that records from the Planning Development Services Division and the Tax Assessor's office differed from the Official Zoning Map. According to Quail Hill, County staff advised it to apply for a

---

1. Richland County Code sections 26–34, 26–501, and 26–502 authorize the County Zoning Administrator to interpret, administer, and enforce County's zoning ordinances. Richland County, S.C., Code art. 3, § 26–34; art. 11, §§ 26–501, –502 (2005).

2. Richland County Code section 26–33 provides that the Official Zoning Map is available for inspection by the general public and states that it is the "only official description of the location of zoning district boundaries, and persons having recourse to this ordinance for any purpose are hereby so notified." Richland County, S.C., Code art. 3, § 26–33 (2005).

zoning map change. However, after Quail Hill applied for the zoning map change, the Planning Commission's report recommended the change be denied. Ultimately, County Council denied Quail Hill's request.

Quail Hill did not appeal County Council's finding, but instead filed suit against County. In its Complaint, Quail Hill requested an injunction and asserted causes of action against County for equitable estoppel, negligent misrepresentation, negligence, and inverse condemnation. Additionally, Quail Hill sought an order requiring County to change zoning of the subject property from RS–1 to RU. Alternatively, Quail Hill sought actual damages and attorney's fees and costs.

After filing an Answer to Quail Hill's allegations, County moved for summary judgment as to all causes of action. In opposition to this motion, Quail Hill introduced a printout of the website for the Richland County Development Services Division, where Gosline worked. The website stated in part:

Since 1997 the department has performed the planning, zoning and land use management staff functions of county government. The department provides principal staff support to the Planning Commission, and Board of Zoning Appeals. Subdivisions, site plans, map amendments, variances, special exceptions and sign permit applications are filed at the Development Services Counter. The Development Services counter is the key point of public contact for the planning and zoning functions of the County. It is the primary information resource of property owners and land use professionals who often need to know "What can and can not [sic] be done with a piece of property."

The site also contained a section of "Frequently Asked Questions." Amongst these questions was the following: "How do I find out how my property is zoned?" The answer states:

A request for zoning verification of any parcel within the unincorporated area of Richland County can be obtained from: Richland County Planning Development.... Please include the current Tax Parcel Number, Street Address, if available, size of tract, or any information that will assist us in locating the correct parcel.

Another question on the site is: "Who should I talk to about Zoning Issues?" The answer lists the Development Services

Manager and the Zoning Administrator, and provides a brief explanation that the "staff can informally respond to any concerns or requirements that must be complied with and also inform you of anything that may impact your project."

At the conclusion of the hearing on the summary judgment motion, the circuit court judge ruled in favor of County as to all of Quail Hill's causes of action.[3] In a subsequent written order, the circuit court judge explained his ruling.

In terms of equitable estoppel, the judge prefaced his discussion with the fact that the "Richland County Zoning Ordinances provide that the official zoning map of Richland County constitutes the only official description of the location of zoning district boundaries, and that the zoning administrator is the only representative on behalf of Richland County that can interpret the official zoning map." The judge further noted that zoning ordinances and state law authorize County Council as the only entity that can adopt or amend zoning designations in the County. Additionally, the judge found that neither Gosline nor the Tax Assessor's office had the authority to interpret, alter, or amend the zoning classifications of property, and any such act would clearly be outside the scope of their authority.

As a result, the judge concluded that "equitable estoppel cannot be applied to frustrate Richland County's attempts to enforce its zoning ordinances." The judge further found Quail Hill had the means to acquire knowledge of the zoning designation of the property because the Official Zoning Map and County ordinances are public record; thus, Quail Hill could not claim to have been misled.

As to Quail Hill's causes of action for negligence and negligent misrepresentation, the trial judge found it was well settled that the South Carolina Tort Claims Act (the Act)[4] governs all tort claims against governmental entities and that the Act is the exclusive civil remedy available in an action against a governmental entity or its employees. Based on the

---

3. The Court of Appeals affirmed the grant of summary judgment as to Quail Hill's claim of inverse condemnation. Quail Hill does not challenge that portion of the opinion.

4. S.C.Code Ann. §§ 15–78–10 to –220 (2005 & Supp.2009).

Act, the judge concluded that a governmental entity is liable for its torts in the same manner and to the same extent as a private individual under like circumstances.

In view of these rules, the judge concluded that County could be liable for negligence and negligent misrepresentation in enforcing and administering zoning "only if a private person can also be held liable for breach of that same duty under South Carolina law." The judge found the duty of care regarding zoning is a uniquely governmental function with no analogous private counterpart.

The judge further held that sections 15–78–40 and 15–78–50(b) of the Act, by their express language, "do not allow for tort liability in this action." Based on this reasoning, the judge concluded that to allow Quail Hill to recover would hold County liable for the negligence of its employees where a private person could not be held liable under state law. Accordingly, the judge found County's sovereign immunity had not been waived.

As an additional basis for granting summary judgment, the judge found that County would be immune from liability under section 15–78–60(4) of the Act "for any compliance, enforcement or failure to enforce" the applicable zoning ordinances. Based on the language of the statute, the judge concluded that County was entitled to absolute sovereign immunity for its compliance or enforcement of its zoning ordinances, which included the designations on the Official Zoning Map. The judge also found County could not be liable for failing to adopt or enforce an RU zoning classification on the property.

Finally, the judge found Quail Hill's claims for negligence and negligent misrepresentation failed because Quail Hill "with the exercise of reasonable diligence could have acquired knowledge as to the zoning of the subject property from the public record and cannot claim to have been misled."

Quail Hill appealed the circuit court judge's order to the Court of Appeals. In a divided opinion, the Court of Appeals affirmed in part[5] and reversed in part the decision of the

---

5. Initially, the Court of Appeals rejected Quail Hill's challenges regarding the validity of County's zoning ordinances and the circuit court judge's grant of summary judgment as to Quail Hill's claim for inverse

circuit court judge. *Quail Hill, LLC v. County of Richland, South Carolina*, 379 S.C. 314, 665 S.E.2d 194 (Ct.App.2008).

With respect to Quail Hill's causes of action for negligence and negligent misrepresentation, the majority of the Court of Appeals concluded that the circuit court judge erred in granting summary judgment. *Id.* at 323, 665 S.E.2d at 199. Although the majority acknowledged there is federal authority to support the circuit court judge's resolution of this issue,[6] it noted that the Court of Appeals' decision relied on by the circuit court judge had recently been reversed.[7] Thus, the majority found there was no South Carolina precedent to support the circuit court's determination that "it is necessary to have a private analogue in order for liability to exist against a governmental entity under the South Carolina Tort Claims Act." *Id.* at 323, 665 S.E.2d at 198. The Court of Appeals declined, "at this premature stage of the litigation," to hold that Quail Hill could not pursue its claims for negligence and negligent misrepresentation based on the provisions of the South Carolina Tort Claims Act. *Id.*

Additionally, the Court of Appeals viewed Quail Hill's claims for negligence and negligent misrepresentation as arising from County's actions in mistakenly advising Quail Hill regarding the applicable zoning restriction on the subject property, not as emanating from the adoption or the enforcement of County's zoning ordinances. Based on this reasoning, the Court of

condemnation. Because Quail Hill has not appealed these findings, we have not included the Court of Appeals' analysis regarding these issues.

6. Specifically, the Court of Appeals referenced the case relied upon by the circuit court judge. *United States v. Olson*, 546 U.S. 43, 43, 126 S.Ct. 510, 163 L.Ed.2d 306 (2005) (interpreting Federal Tort Claims Act and holding United States waives sovereign immunity under circumstances where local law would make a "private person" liable in tort, not where local law would make state or municipal entity liable even where uniquely governmental functions are at issue).

7. *Sloan Constr. Co. v. Southco Grassing, Inc.*, 368 S.C. 523, 629 S.E.2d 372 (Ct.App.2006), *rev'd*, 377 S.C. 108, 659 S.E.2d 158 (2008) (concluding Court of Appeals erred in finding subcontractor's claims for negligence and breach of contract under Suppliers' Payment Protection Act (SPPA) did not give rise to a private right of action against the South Carolina Department of Transportation pursuant to statutory bond requirements; noting the Act was not relevant to the government's liability for failure to comply with a duty under the SPPA).

Appeals held the circuit court judge erred in finding section 15–78–60(4) of the Act, which grants a municipal entity sovereign immunity for the adoption or enforcement of an ordinance, barred Quail Hill's claims. *Id.* at 323, 665 S.E.2d at 199.

In terms of Quail Hill's equitable estoppel claim, the Court of Appeals found the circuit court judge erred in granting summary judgment to County. In reaching this conclusion, the Court of Appeals cited and analyzed the three elements of estoppel.

Initially, the Court of Appeals addressed whether Quail Hill lacked the knowledge to discover the correct zoning classification of the property. *Id.* at 324–25, 665 S.E.2d at 199. The Court of Appeals held the circuit court judge's finding as to whether Price, the Zoning Administrator, was the only person who could interpret the official zoning map "ignores the clear import of the County's website which directs the public to the Development Services Counter as 'the primary information resource of property owners and land use professionals' " to determine " '[w]hat can and can not [sic] be done with a piece of property.' " *Id.* The court also referenced the "Frequently Asked Questions" portion of the website that advised the public to check the zoning of a parcel prior to its development by consulting with the Department of Development Services, and suggested that it is advisable to meet with the Planning Staff to discuss any upcoming projects. The court further emphasized that nowhere on the website did it state that the Official Zoning Map must be consulted to determine a property's correct zoning designation. *Id.*

Based on this reasoning, the court concluded a genuine issue of material fact existed as to whether Quail Hill possessed the knowledge or the means to acquire the knowledge concerning the true zoning of this property. *Id.* at 325, 665 S.E.2d at 199. The court also instructed that both parties would have the opportunity to develop evidence on the issue of whether or not the Official Zoning Map in Richland County is the exclusive means for acquiring zoning information. *Id.* at 325, 665 S.E.2d at 199–200.

In terms of justifiable reliance, the court noted that Quail Hill purchased the parcel, then surveyed, platted and pre-

pared it for development based on information conveyed by County's staff. *Id.* at 326, 665 S.E.2d at 200. In view of this evidence, the court held a genuine issue of material fact existed as to whether Quail Hill's reliance on the representations of County officers and staff, acting within their proper scope of authority, was justified. *Id.*

## ISSUES

We granted County's petition for a writ of certiorari to review the following issues:

1. Did the Court of Appeals err in failing to apply prior precedent from the Supreme Court and in concluding that the government cannot be estopped for mistaken statements of law?

2. Did the Court of Appeals err in failing to apply long-standing principles in this state limiting the use of equitable estoppel to thwart the police power where an unauthorized person provides erroneous information?

3. Did the Court of Appeals err in reversing summary judgment on the negligence and negligent misrepresentation causes of action where those claims are premised entirely on misstatements of law upon which Quail Hill had no justifiable right to rely?

4. Did the Court of Appeals err in declining to rule on County's sovereign immunity defense based upon the application of sections 15–78–40 and 15–78–50(b) of the Act and also in failing to affirm summary judgment on the basis of sovereign immunity?

## DISCUSSION

### I. Standard of Review

Rule 56(c) of the South Carolina Rules of Civil Procedure provides that a trial court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

"In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Pye v. Estate of Fox*, 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006). An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56, SCRCP. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000). "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts." *Id.* at 378, 534 S.E.2d at 692.

## II. Equitable Estoppel

County generally argues the Court of Appeals erred in finding there existed any genuine questions of material fact with respect to Quail Hill's cause of action for equitable estoppel. In support of this argument, County raises two claims.

First, relying on this Court's decision in *Greenville County v. Kenwood Enterprises, Inc.*, 353 S.C. 157, 577 S.E.2d 428 (2003), *overruled on other grounds by Byrd v. City of Hartsville*, 365 S.C. 650, 620 S.E.2d 76 (2005), and the Court of Appeals' decision in *Morgan v. South Carolina Budget and Control Board*, 377 S.C. 313, 659 S.E.2d 263 (Ct.App.2008), County avers that administrative officers of a governmental entity cannot estop that entity through mistaken statements of law. Because the zoning designation of a particular piece of property is established by ordinance and governed by the Official Zoning Map, it constitutes a matter of law. In turn, a zoning designation may be changed only through legislative action by the Richland County Council. Thus, any misrepresentation by a County official is a mistaken statement of law that cannot subject the governmental entity to estoppel. Furthermore, given Quail Hill could have consulted the Official Zoning Map and related ordinances, but failed to do so, it cannot establish estoppel.

Secondly, County asserts equitable estoppel does not apply given the incorrect zoning information was provided by Gosline and the Tax Assessor's Office, neither of which were

authorized to provide zoning information. Because the County Zoning Administrator was the only authorized person to provide this information, County contends Quail Hill was not justified in its reliance on information furnished by unauthorized staff members. Additionally, given Quail Hill could have with reasonable diligence acquired the correct zoning of the property by consulting the Official Zoning Map or contacting the Zoning Administrator, it cannot assert estoppel against County.

 "As a general rule, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy." *Kenwood Enters.,* 353 S.C. at 171, 577 S.E.2d at 435. This Court has explained:

> No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of . . . one of its officers or agents. . . .
>
> . . . .
>
> A governmental body is not immune from the application of the doctrine of estoppel *where its officers or agents act within the proper scope of their authority . . . The public cannot be estopped, however, by the unauthorized or erroneous conduct* **or** *statements of its officers or agents which have been relied on by a third party to his detriment.*

*DeStefano v. City of Charleston,* 304 S.C. 250, 257–58, 403 S.E.2d 648, 653 (1991) (citations omitted)(emphasis added). Furthermore, " 'administrative officers of the state cannot estop the state through mistaken statements of law.' " *Kenwood Enters.,* 353 S.C. at 172, 577 S.E.2d at 436 (quoting *Kelso & Irwin, P.A., v. State Ins. Fund,* 134 Idaho 130, 997 P.2d 591, 599 (2000)). Specifically, "[e]stoppel will not lie against a government entity where a government employee gives erroneous information in contradiction of statute. Simply stated, equity follows the law." *Morgan,* 377 S.C. at 319, 659 S.E.2d at 267 (citations omitted).

 If estoppel is applicable against a government agency, a relying party must prove: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) justifiable reliance upon the government's conduct, and (3) a

prejudicial change in position. *Grant v. City of Folly Beach*, 346 S.C. 74, 80, 551 S.E.2d 229, 232 (2001).

For reasons that will be discussed, we believe the Court of Appeals erred in reversing the circuit court's grant of summary judgment to County as to Quail Hill's claim of equitable estoppel.

■ Initially, to estop County from enforcing the RS–1 zoning classification would be in direct contravention of the general rule that a governmental entity may not be estopped by the unauthorized or erroneous conduct or statements of its officers or agents. Here, neither Gosline nor the Tax Assessor's office was authorized to interpret or alter the zoning classification designated on the Official Zoning Map. Notably, Gosline did not work for the Zoning Administrator, and his zoning information was "fed" through the Tax Assessor's office and not that of the Zoning Administrator. Pursuant to the Richland County ordinances, the only authorized County employee was the Zoning Administrator.[8] There is no evidence that Quail Hill consulted the Zoning Administrator prior to its purchase and subsequent development of the property at issue. Because the erroneous zoning information relied on by Quail Hill was conveyed by unauthorized individuals, the doctrine of equitable estoppel may not, as a matter of law, be invoked against County.

Furthermore, we disagree with the Court of Appeals' finding that the statements on the Richland County website created a genuine issue of material fact. Although the website language states that the Development Services counter is the "primary information resource of property owners and land use professionals," there is no evidence that Quail Hill relied on these statements. More importantly, the statements cannot supersede what is authorized by the Richland County ordinances. Significantly, the website states that Planning Staff can "*informally* respond to any concerns or requirements that must be complied with and also inform you of anything that may impact your project." (Emphasis added). The site also directs interested persons to the online Richland County zoning code.

---

8. Richland County, S.C., Code art. 3, § 26–34; art. 11, § 26–502 (2005).

A decision to affirm the circuit court judge's grant of summary judgment to County on this claim is consistent with our state's jurisprudence regarding the applicability of the doctrine of equitable estoppel to a government entity. *See DeStefano*, 304 S.C. at 257–58, 403 S.E.2d at 653 (finding City was not estopped from refusing to issue building permits even though Deputy City Engineer and Zoning Administrator made errors which led to the recording of citizen's plat); *McCrowey v. Zoning Bd. of Adjustment of the City of Rock Hill*, 360 S.C. 301, 306, 599 S.E.2d 617, 620 (Ct.App.2004) (holding doctrine of equitable estoppel was not applicable to City where Zoning Administrator erroneously issued a certificate of zoning compliance given Zoning Administrator "did not have the authority to alter or waive the zoning ordinance in question" and "equitable estoppel could not be applied to frustrate the attempts by [City] to enforce its zoning code as written"); *see also Am. Legion Post 15 v. Horry County*, 381 S.C. 576, 674 S.E.2d 181 (Ct.App.2009) (concluding County was not estopped from raising statute of limitations against non-profit corporations seeking refunds of fees where corporations paid fees based on County employee's conduct that was in contradiction of a statute); *Morgan*, 377 S.C. at 319–22, 659 S.E.2d at 267–68 (holding Retirement Systems was not estopped from calculating the cost of plaintiff's service credit using his current, career-high salary even though Retirement Systems' misinformation and delays prevented plaintiff from completing his purchase before his salary increase given eligibility to purchase service credit is purely statutory and, thus, Retirement Systems lacked authority to contradict the statute).

More importantly, we agree with County's argument that the RU zoning classification was a mistaken statement of law and, thus, could not be used to estop County from enforcing it. *Cf. Kenwood Enters.*, 353 S.C. at 173, 577 S.E.2d at 436 (concluding County was not estopped from enforcing zoning ordinance where County official's representations regarding the constitutionality of the subject ordinance was an "erroneous statement of the law"); *see Meyer v. Santema*, 559 N.W.2d 251, 255 (S.D.1997) (recognizing that misrepresentations regarding interpretation and implementation of a zoning ordinance constitute misrepresentations of matters of law).

■ Alternatively, even if the doctrine of estoppel were applicable to County in the instant case, we find Quail Hill failed to establish the requisite elements.

Admittedly, Quail Hill experienced a prejudicial change of position due to the erroneous zoning information. However, Quail Hill had the "means of knowledge" to determine the correct zoning classification and could not justifiably rely solely on information provided by staff members. There is no evidence that Brown, an experienced real estate broker,[9] ever examined the publicly-accessible zoning map or consulted with anyone other than Gosline to determine the zoning classification. *See Grant,* 346 S.C. at 82, 551 S.E.2d at 233 (holding City, which had issued erroneous building permits, was not estopped from enforcing zoning ordinance where building owner could have easily ascertained flood limitations on his building by reviewing the zoning/flood ordinance); *cf. Abbeville Arms v. City of Abbeville,* 273 S.C. 491, 257 S.E.2d 716 (1979) (holding City was estopped from denying building permit on basis of corrected zoning after discovering the zoning map had been made up defectively given developer checked the zoning ordinance, including the Official Zoning Map, and received written confirmation from the City Zoning Administrator).

### III. Negligence/Negligent Misrepresentation

For several reasons, County contends the Court of Appeals erred in reversing the grant of summary judgment as to Quail Hill's claims for negligence and negligent misrepresentation. We agree with each of County's arguments.

As a threshold matter, County claims the negligence claim should be treated solely as a cause of action for negligent misrepresentation because the crux of Quail Hill's complaint is that County furnished erroneous information regarding the subject property's zoning.

Next, County asserts the Court of Appeals failed to address the fact that Quail Hill did not present any evidence to support its negligent misrepresentation claim. Specifically, County contends Quail Hill could not have justifiably relied on

---

**9.** Significantly, Quail Hill's pleadings characterize Brown as "experienced in the development of manufactured home subdivisions."

a mistaken representation regarding the proper zoning classification. County avers that a misrepresentation as to the correct zoning status is not actionable given the zoning of the property was a legal issue, not a factual issue, and claims for negligent misrepresentation cannot be based on mistaken statements of law. Finally, County contends Quail Hill could have discovered the proper zoning classification had it exercised reasonable diligence.

■ We agree with County that Quail Hill's claims of negligence and negligent misrepresentation should be treated as solely one for negligent misrepresentation. Notably, the circuit court judge and the Court of Appeals did not address these two claims in seriatim, but instead merely ruled on the negligent misrepresentation cause of action. Although pled separately, we find Quail Hill's claim for negligence is essentially subsumed in the negligent misrepresentation cause of action.

■ To prove a claim for the common law tort of negligent misrepresentation, Quail Hill was required to establish the following elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*West v. Gladney*, 341 S.C. 127, 134, 533 S.E.2d 334, 337 (Ct.App.2000).

■ "There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *AMA Mgt. Corp. v. Strasburger*, 309 S.C. 213, 223, 420 S.E.2d 868, 874 (Ct.App.1992). "[W]hile issues of reliance are ordinarily resolved by the finder of fact, 'there can be no reasonable reliance on a misstatement if the plaintiff knows the truth of the matter.'" *McLaughlin v. Williams*, 379 S.C. 451, 457–58, 665 S.E.2d 667, 671 (Ct.App.2008) (quoting *Gruber v. Santee Frozen Foods, Inc.*, 309 S.C. 13, 20, 419 S.E.2d 795, 800

(Ct.App.1992)). "Thus, if the undisputed evidence clearly shows the party asserting reliance has knowledge of the truth of the matter, there is no genuine issue of material fact." *Id.* at 458, 665 S.E.2d at 671. A determination of justifiable reliance involves the evaluation of the totality of the circumstances, which includes the positions and relations of the parties. *West,* 341 S.C. at 134, 533 S.E.2d at 337.

 Turning to the facts of the instant case, we disagree with the Court of Appeals that there exists a genuine issue of material fact with respect to Quail Hill's claim for negligent misrepresentation. We find this claim is controlled by the question of whether Quail Hill could have justifiably relied on the representations of County staff. As previously stated, Quail Hill could have reviewed the Official Zoning Map to ascertain the correct zoning classification. Moreover, given the fact that Brown, as the agent of Quail Hill, was an experienced real estate broker, it would be difficult to conclude that his reliance solely on the statements of Gosline and the Tax Assessor's records was reasonable.

Furthermore, there is authority to support County's contention that misrepresentations as to matters of law are not actionable. *See, e.g., Meyer v. Santema,* 559 N.W.2d 251, 255 (S.D.1997) (affirming grant of summary judgment to City as to purchasers' cause of action for negligent misrepresentation stemming from erroneous representations regarding zoning given the misrepresentation involved a matter of law and "county officials may not be held liable in damages when they negligently misrepresent the legal requirements of their zoning ordinance to members of the public who rely on that misrepresentation").

In view of our conclusion that Quail Hill's negligence/negligent misrepresentation claim fails as a matter law, we need not address County's remaining argument regarding immunity under the Tort Claims Act.

## CONCLUSION

Because there is no challenge to the Court of Appeals' decision affirming the grant of summary judgment regarding Quail Hill's claim of inverse condemnation and the validity of the County's zoning ordinances, we affirm those portions of

the opinion. We reverse, however, the Court of Appeals' decision regarding Quail Hill's claims of equitable estoppel, negligence, and negligent misrepresentation.

**AFFIRMED IN PART AND REVERSED IN PART.**

TOAL, C.J., KITTREDGE, J., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., concurring in result only.