# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Rory M. Isaac and Kimberly J. Isaac, Respondents,

v.

Thomas C. Onions, Jacqueline Onions, Laura Kopchynski, and Lane's Professional Pest Elimination, Inc.,

Of Whom Laura Kopchynski is the Petitioner.

Appellate Case No. 2023-001462

———

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———

Appeal From Georgetown County
Benjamin H. Culbertson, Circuit Court Judge

———

Opinion No. 28274
Heard January 15, 2025 – Filed April 23, 2025

———

## REVERSED

———

Steven Raymond Kropski, of Earhart Overstreet, LLC, of Charleston, for Petitioner.

George W. Redman, III, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach, for Respondents.

———

**JUSTICE VERDIN:** Rory M. Isaac and Kimberly J. Isaac, the buyers in a residential real estate transaction, brought this action against sellers Jacqueline and Thomas C. Onions's real estate agent, Laura Kopchynski, for her failure to disclose reports indicating a high level of moisture in the crawl space of the Onionses' house (the Property) and her mischaracterization of a wood infestation report[1] as "good" when the report revealed high moisture levels. The circuit court granted Kopchynski summary judgment on the Isaacs' claims for fraud, fraud in the inducement, negligent misrepresentation, civil conspiracy, and violation of the South Carolina Residential Property Condition Disclosure Act[2] (Disclosure Act). The court of appeals reversed the grant of summary judgment on the negligent misrepresentation and Disclosure Act claims and affirmed the grant of summary judgment on the remaining claims. *Isaac v. Onions*, Op. No. 2023-UP-263 (S.C. Ct. App. filed July 12, 2023). This Court granted Kopchynski's petition for certiorari. Kopchynski argues the court of appeals erred in (1) applying the "mere scintilla" standard to an order granting summary judgment; (2) finding an issue of material fact existed as to the Isaacs' negligent misrepresentation claim; and (3) finding an issue of material fact existed as to the Disclosure Act claim. We now reverse the court of appeals.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In April 2018, the Onionses hired real estate agent and fellow Litchfield Plantation resident Kopchynski to list the Property for sale. Kopchynski provided them a South Carolina Residential Property Disclosure Form (Disclosure Form), which Mr. Onions completed. He noted there were no "present wood problems caused by termites, insects, wood destroying organisms, dry rot[,] or fungus."

The Property quickly went under contract with buyers not involved in this action (First Buyers). First Buyers hired Cornerstone Home Inspections of SC to inspect the Property. This inspection report (Cornerstone Report) noted several issues with the crawlspace. It stated, "There are areas of ground that are not covered by a vapor barrier and the ground is damp. Recommend further inspection and any needed corrections by a crawl space specialty company." The Cornerstone Report included several captioned pictures of the crawlspace showing the damp ground, missing vapor barrier, and debris on top of the vapor barrier.

---

[1] The wood infestation report uses Form CL-100 approved by the South Carolina Pest Control Association, Inc. and the Division of Regulatory and Public Service Programs of Clemson University and is known as a CL-100 Report.

[2] S.C. Code Ann. §§ 27-50-10 to -110 (2007 & Supp. 2024).

At Kopchynski's recommendation, the Onionses hired Andy Ward of Stark Exterminators to inspect the crawl space and provide them with a repair quote. During his inspection on May 18, 2018, Stark found elevated moisture conditions of 20-23% to 22-25%, which he showed on a graph, and evidence of wood decay fungi[3] and existing visible damage. Ward proposed installing a dehumidifier, which would be wired by a licensed electrician, installing a vapor barrier after removing existing debris, covering vents from the crawl space to prevent air movement, and cleaning and treating all exposed wood if necessary. The proposed cost was $4,595.00 plus $200 a year for annual service. After he completed his inspection, Ward spoke with Mrs. Onions and Kopchynski about his findings.

The Onionses hired neighborhood handyman Emery Custer to repair the crawl space and the other items noted on the Cornerstone Report. Custer worked on the Property for three days, installing a vapor barrier where needed, removing pieces of ductwork left there, replacing insulation where it was missing, adding insulation hangers as needed, and installing a fan. The cost for all of his work was $706.[4]

In preparation for closing, First Buyers hired Lane's Professional Pest Elimination (Lane's) to prepare a CL-100 Report, which Joseph Sheheen performed on June 18, 2018 (June CL-100). In the report, Sheheen found no visible evidence of any wood-destroying insects or a wood moisture content high enough to indicate active wood-destroying fungi. However, he found an elevated wood moisture content ranging from 20% to 25%, which indicated non-active wood-destroying fungi. Sheheen testified in his deposition that he discussed his findings with the Onionses and recommended the installation of the fan to help reduce the moisture levels. On the same day as the inspection, First Buyers and the Onionses terminated their contract because the appraisal contingency was not met, which was unrelated to the inspections. Kopchynski contacted other agents, including the Isaacs' agent, Ed

---

[3] According to the CL-100 form, a wood moisture content greater than 20% indicates excessive moisture; a wood moisture content of less than 28% indicates non-active wood destroying fungi; and a wood moisture content equal to or greater than 28% indicates active wood-destroying fungi.

[4] Using Custer's notes and admittedly paraphrasing, Mr. Onions typed two documents listing Custer's work, incorrectly referring to Custer in one as a "Licensed General Contractor." Custer is not a general contractor; he is not licensed to build a house or an addition. However, he is a licensed contractor specializing in vinyl and aluminum siding, carpentry, and roofing.

Kimbrough, to let them know the Property was available again. On June 19, 2018, she emailed Kimbrough the governing documents for Litchfield Plantation. She told him she had the home inspection on hand and a repair verification form prepared by the contractor who made the repairs. In addition, she wrote, "CL-100 was done yesterday and from what I understood it was good, but I can obtain the report if/when necessary as the sellers paid for it." Kimbrough declined this offer. The Onionses also provided the Isaacs with the Disclosure Form they had completed in April. Although they did not change their answer denying a present problem with a wood destroying fungus, they noted "See Repair Verification." Kimbrough acknowledged he received the Cornerstone Report and repair document.

The parties went under contract on June 20, 2018. Although the Isaacs did not hire their own home inspector, they hired Lane's to do their CL-100 inspection because Kopchynski told Kimbrough the Onionses had used Lane's in the past. Lane's employee Sheheen, who had performed the June CL-100, conducted the inspection for the Isaacs on July 11, 2018 (July CL-100). In his report, he noted there was no evidence of active or non-active wood-destroying fungus and the moisture content of the wood was not excessive at 8-18%. Mr. Isaacs testified that he believed the July CL-100 showed that the repairs worked to fix the moisture issues and that he depended on the report's "truthfulness and its accuracy."

The Isaacs closed on the Property on July 23, 2018. Two days later, heavy rainfall led to flooding into the crawlspace. The Isaacs hired Ward with Stark Exterminators, to inspect the crawl space.[5] When Ward first went to the Property, standing water in and around the crawl space prevented him from carrying out his inspection. A week later he conducted his inspection and found standing water, excessive moisture conditions of above 27% to 32% in specific locations, active and non-active wood decay fungi with associated damage, existing visible damage in the form of discolored wood, and possible hidden damage.

On November 16, 2018, the Isaacs brought this action against Kopchynski, the Onionses, and Lane's asserting causes of action for fraud, fraud in the inducement, and/or misrepresentation; negligent misrepresentation; and civil conspiracy as to all defendants; violation of the Disclosure Act as to Kopchynski and the Onionses; breach of contract and breach of contract accompanied by a fraudulent act as to the Onionses; and negligence as to Lane's. Kopchynski moved for summary judgment,

---

[5] At the time they hired Stark Exterminators, the Isaacs did not know the company had performed an inspection in May.

which the circuit court granted on all claims against her. The court noted the Isaacs had relied upon the July CL-100, which they had commissioned, when they closed on the Property. The court also found the Isaacs could not hold Kopchynski liable for the alleged inaccuracies in that report.

The court of appeals reversed the grant of summary judgment regarding the negligent misrepresentation and Disclosure Act claims and affirmed the grant of summary judgment on the fraud and civil conspiracy claims based on the higher standard of review and stricter elements. This Court granted Kopchynski's petition for certiorari.

## II. STANDARD OF REVIEW

Appellate courts review summary judgment determinations using the same standard as the circuit court. *Braden's Folly, LLC v. City of Folly Beach*, 439 S.C. 171, 190, 886 S.E.2d 674, 684 (2023). "Rule 56(c) of the South Carolina Rules of Civil Procedure provides that the moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) (alterations in original) (quoting Rule 56(c), SCRCP). In *Kitchen Planners*, this Court recently clarified "that the 'mere scintilla' standard does not apply under Rule 56(c)." *Id.* at 463, 892 S.E.2d at 301. "Rather, the proper standard is the 'genuine issue of material fact' standard set forth in the text of the Rule."[6] *Id.*

"In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party." *Summer v. Carpenter*, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997). To survive summary judgment, "it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Kitchen Planners*, 440 S.C. at 462, 892 S.E.2d at 301 (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)). "The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548

---

[6] The court of appeals' opinion was filed July 12, 2023, and the order denying Kopchynski's petition for rehearing was filed August 16, 2023. Thus, the court of appeals did not have the guidance of this Court's opinion in *Kitchen Planners*, which was filed August 22, 2023.

S.E.2d 868, 874 (2001).  "In that way, '[a] motion for summary judgment is akin to a motion for a directed verdict' because '[i]n each instance, one party must lose as a matter of law.'"  *Id.* (alterations in original) (quoting *Main v. Corley*, 281 S.C. 525, 526, 316 S.E.2d 406, 407 (1984)).  "Additionally, the interpretation of a statute is a question of law for the Court to review de novo."  *S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 432 S.C. 492, 495, 854 S.E.2d 836, 837 (2021).

## III.  LAW/ANALYSIS

## 1.  Negligent Misrepresentation

Kopchynski argues the court of appeals erred in reversing the grant of summary judgment on the negligent misrepresentation claim.  We agree.

To prove a claim for negligent misrepresentation, a plaintiff must establish the following elements:

> (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation.

*Quail Hill, LLC v. County of Richland*, 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010) (quoting *West v. Gladney*, 341 S.C. 127, 134, 533 S.E.2d 334, 337 (Ct. App. 2000)).

"There is no liability for casual statements, representations as to matters of law, or matters which plaintiff could ascertain on his own in the exercise of due diligence." *Id.* (quoting *AMA Mgt. Corp. v. Strasburger*, 309 S.C. 213, 223, 420 S.E.2d 868, 874 (Ct. App. 1992)).  "A determination of justifiable reliance involves the evaluation of the totality of the circumstances, which includes the positions and relations of the parties."  *Id.* at 241, 692 S.E.2d at 508.

In *Quail Hill*, this Court held summary judgment was appropriate on a developer's claim for negligent misrepresentation based on county employees giving it

inaccurate zoning information because the developer could not have justifiably relied on the representations.  *Id.* at 241, 692 S.E.2d at 509.  In addition to noting the developer could have reviewed the official zoning map, it found the developer could not have reasonably relied on the employees' statement when its agent was an experienced real estate broker.  *Id.*

As a real estate licensee, Kopchynski owed the Isaacs a duty to be truthful.  *See* S.C. Code Ann. § 40-57-350 (G)(1) (Supp. 2024) ("A licensee shall treat all parties honestly and may not knowingly give them false or misleading information about the condition of the property which is known to the licensee.").  However, "[a] licensee is not obligated to discover latent defects or to advise parties on matters outside the scope of the licensee's real estate expertise.  Notwithstanding another provision of law, no cause of action may be brought against a licensee who has truthfully disclosed to a buyer a known material defect."  *Id.*  Furthermore, the Isaacs had a duty to inspect the Property.  *See* § 27-50-80 ("This article does not limit the obligation of the purchaser to inspect the physical condition of the property and improvements that are the subject of a contract covered by this article.").  "Taken together, these sections provide that a real estate licensee does not have a duty to inspect or investigate the physical condition of a piece of property for the purpose of confirming or denying statements made by a seller in a disclosure statement."  *Chastain v. Hiltabidle*, 381 S.C. 508, 519, 673 S.E.2d 826, 832 (Ct. App. 2009).  "Rather, the Legislature places the duty of performing such an inspection or investigation squarely on the shoulders of the buyer."  *Id.*

Here, the Isaacs' agent, Kimbrough, recognized the Isaacs had the duty to inspect the Property and verify the repairs had resolved the issues.  Although he stated that if Kopchynski had reported that the June CL-100 was bad, he probably would have asked to see it, he was adamant that he did not rely on Kopchynski's representation that the June CL-100 was "good."  In his deposition, Kimbrough testified he did not want the June CL-100 report "because it's our responsibility to do it.  It was going to be on our terms, not on their terms or anybody else's terms."  He related, "I thought when she said 'good,' I thought, perfect.  We're not going to have an issue on that.  We will order our own CL-100 and we'll verify the information that we need to see regarding repairs."  He also stated, "I wouldn't say I wouldn't care about [the June CL-100], but the fact is it was reported that it was good and it was up to us to verify that it was good and the only way to verify it was to . . . take responsibility for the CL-100 ourselves, which is what we planned to do all along."  He asserted the July CL-100 "would have verified and confirmed that the repairs . . . were working.  That being the vapor barrier, reducing the moisture by the use of a fan system."  He further stated he discussed this matter with the Isaacs.

Considering Kimbrough's testimony, and Kopchynski's provision to the Isaacs of the Cornerstone Report, giving them notice of the crawl space moisture issues, and the repair list informing them of the repairs the Onionses made in response to the report, we find the Isaacs failed to create a genuine issue of material fact that they reasonably relied on any representation by Kopchynski concerning the June CL-100. Accordingly, because the Isaacs cannot create a genuine issue of material fact as to an element of negligent misrepresentation, their claim fails as a matter of law. Therefore, we hold the circuit court properly granted Kopchynski summary judgment on this claim.

## 2. Violation of the Disclosure Act as a Cause of Action

Kopchynski argues the court of appeals erred in reversing the circuit court's grant of summary judgment on the Isaacs' Disclosure Act claim. We agree because the Disclosure Act does not create a private cause of action against real estate licensees.

"The main factor in determining whether a statute creates a private cause of action is legislative intent." *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 576, 614 S.E.2d 619, 622 (2005).

> The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty, is determined primarily from the language of the statute. . . . In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability.

*Id.* (alteration in original) (quoting *Dorman v. Aiken Comm'n, Inc.*, 303 S.C. 63, 67, 398 S.E.2d 687, 689 (1990)); *see also Kubic v. MERSCORP Holdings, Inc.*, 416 S.C. 161, 170, 785 S.E.2d 595, 600 (2016) ("When the legislature delineated who would be able to bring a suit pursuant to section 30-9-30(B), it chose not to afford that right to government officials. We decline to imply language into a deliberate silence because to do so would be to rewrite the statute."). In addition, "[t]he canon of construction '*expressio unius est exclusio alterius*' or '*inclusio unius est exclusio alterius*' holds that 'to express or include one thing implies the exclusion of another, or of the alternative.'" *Hodges v. Rainey*, 341 S.C. 79, 86, 533

S.E.2d 578, 582 (2000) (quoting *Expressio Unius Est Exclusio Alterius*, Black's Law Dictionary (7th ed. 1999)).

The Disclosure Act creates a private cause of action against an owner who knowingly violates or fails to perform any duty prescribed by the Act. *See* § 27-50-65 (allowing a purchaser to sue for actual damages, court costs, and attorney's fee "[a]n owner who knowingly violates or fails to perform any duty prescribed by any provision of this article or who discloses any material information on the disclosure statement that he knows to be false, incomplete, or misleading"). In contrast, while the Disclosure Act provides for immunity for real estate licensees when they did not know or have reason to know about issues,[7] it does not provide for a cause of action against them. However, it does recognize that other causes of action may be brought against licensees. *See* § 27-50-50(C) ("A real estate licensee acting as a listing agent or a selling agent is subject to the regulations governing his license and performance of his responsibilities as licensee, as provided by the commission. This article does not limit any other remedy available to the purchaser under law.").

Thus, considering the plain language of the Disclosure Act, we hold that the legislature did not intend to create a cause of action for violation of the Disclosure Act against real estate licensees. We, therefore, reverse the court of appeals and reinstate the circuit court's grant of summary judgment on this claim.

## 3. The Isaacs' Other Issues

The Isaacs raise several procedural arguments in their brief. Because they did not petition for rehearing of the court of appeals' opinion or petition for certiorari, the Isaacs' arguments are not properly before this Court. *See* Rule 242(d)(1), SCACR ("Only those questions raised in the Court of Appeals and in the petition for rehearing shall be included in the petition for writ of certiorari as a question presented to the Supreme Court."); *Mazloom v. Mazloom*, 392 S.C. 403, 403-04, 709 S.E.2d 661 (2011) (declining to address an issue not raised in the petition for rehearing); *id.* at 404, 709 S.E.2d at 661 (noting an issue not raised in the petition for rehearing is the law of the case).

---

[7] *See* § 27-50-70(B) (providing the listing agent is not liable to a purchaser if the owners' disclosure form includes "false, incomplete, or misleading information" if the agent "did not know or have reasonable cause to suspect the information was false, incomplete, or misleading").

**CONCLUSION**

Given the Isaacs' agent's vehement denials of relying on any representation by Kopchynski's statement regarding the June CL-100, we find the Isaacs failed to create a genuine issue of fact regarding their reliance on the statement. Accordingly, we hold the circuit court correctly granted summary judgment to Kopchynski on the Isaacs' claim for negligent misrepresentation. In addition, we hold the Isaacs' claim for violation of the Disclosure Act failed because the legislature did not intend for purchasers to have a private cause of action against the listing agent for violation of the Act. Therefore, we reverse the court of appeals and reinstate the circuit court's grant of summary judgment to Kopchynski.

**REVERSED.**

**KITTREDGE, C.J., FEW, JAMES, JJ., and Acting Justice Courtney Clyburn Pope, concur.**