On September 20, 2001, Lynette Nicholas, individually and as the natural mother of Kurk L. Nicholas, Jr., her deceased son, sued Nationwide Insurance Company, seeking underinsured-motorist benefits. Nicholas also alleged negligence and wantonness based, she claimed, on Nationwide's failure to comply with § 32-7-23, Ala. Code 1975, the Alabama Uninsured Motorist Statute.
On August 19, 2002, Nationwide filed a motion for a summary judgment and a statement of undisputed facts, arguing that Nicholas's husband was the primary policyholder and that he had expressly rejected uninsured-motorist coverage. On September 4, 2002, Nicholas filed a brief in opposition to Nationwide's summary-judgment motion, arguing that a genuine issue of material fact existed as to whether she had waived her right to uninsured-motorist coverage. Following a hearing, the trial court entered the following order:
 "This matter came before the court for a Pretrial Conference and hearing on Defendant Nationwide Insurance Company's Motion for Summary Judgment. *Page 459 
After hearing argument on the Summary Judgment Motion, and after being apprised by the parties that they waive their right to a jury trial, and that there are no genuine facts in dispute, and that the dispositive issue in the case is a legal one, due to be decided by the Court, and having considered the positions of the parties as set forth in the record and in oral argument presented by the parties;
 "It is therefore ordered, adjudged, and decreed that the defendant's Motion for Summary Judgment is denied and, further, that a Final Judgment is, hereby entered in favor of the Plaintiffs in the amount of $40,000.00. Costs are taxed to the Defendant."
No postjudgment motions were filed; Nationwide filed a notice of appeal on November 14, 2002.
It appears that the following facts are undisputed: Nationwide issued an automobile insurance policy listing Kurk Nicholas, Sr., and Lynette Nicholas, as the named insureds. The policy provided that 19-year-old Kurk Nicholas, Jr., was qualified for "family" coverage because, under the policy, "residents of the same household, [the policyholder's] spouse, the relatives of either and any other person under the age of 21 in the care of any of the foregoing including the Policyholder" were provided with protection. On October 29, 1999, Kurk Nicholas, Sr., renewed the policy and signed a statement rejecting uninsured-motorist coverage; that policy was still in effect at the time of the accident in which Kurk Nicholas, Jr., was killed. Three automobiles were insured under the policy. It is undisputed that Lynette Nicholas did not sign a statement. On June 9, 2001, Kurk Nicholas, Jr., was struck by an underinsured intoxicated driver and was killed.[1] The policy provided $20,000 per person and $40,000 per accident in uninsured-motorist coverage.
Section 32-7-23, Ala. Code 1975, provides, in part:
 "(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."
The sole issue on appeal is, when a policy lists more than one named insured, must each named insured expressly reject uninsured-motorist coverage or is the rejection by one of the named insureds effective as a rejection of such coverage on *Page 460 
behalf of all the named insureds? Our supreme court has held "a policy exclusion that `is more restrictive than the uninsured motorist statute . . . is void and unenforceable.'" Peachtree Cas. Ins. Co. v. Sharpton,768 So.2d 368, 370 (Ala. 2000) (quoting Watts v. Preferred Risk Mut.Ins. Co., 423 So.2d 171, 175 (Ala. 1982)). The Uninsured Motorist Statute "lays down a rule of construction requiring courts to interpret all motor vehicle liability insurance policies as providing the statutory coverage unless an agreement to reject on the part of the named insured is in evidence." Insurance Co. of North America v. Thomas, 337 So.2d 365, 369
(Ala.Civ.App. 1976).
In State Farm Mutual Automobile Insurance Co. v. Martin, 292 Ala. 103,289 So.2d 606 (1974), the issue was whether the husband, one of the named insureds, was covered by the provisions of his State Farm policy where his wife had signed a statement rejecting such coverage. The husband's daughter had been injured when she was struck by an uninsured motorist. State Farm declined the husband's uninsured-motorist coverage because of the wife's express rejection of such coverage. The evidence in the record indicated that the Alabama Department of Insurance had sent a memorandum to insurance companies requiring that rejections of uninsured-motorist coverage "`shall be in writing signed by the named insured.'"292 Ala. at 106, 289 So.2d at 609 (emphasis omitted). State Farm had preprinted forms providing for such a rejection, which the wife signed. Both the husband and the wife were listed in the policy as named insureds. The husband sued State Farm, seeking a declaratory judgment on the question of coverage. The trial court held that the husband was covered.
Title 36, § 74(62a), Ala. Code 1940 (Recomp. 1958), the predecessor to § 32-2-37, was in effect when Martin was decided; it provided, in pertinent part:
 "No automobile liability . . . policy . . . shall be delivered or issued . . . in this state . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."
Our supreme court in Martin held that the trial court did not err in concluding that the daughter was covered. The supreme court held that the general provision of the statute requiring that uninsured-motorist coverage be offered was qualified by a proviso that the "named insured" shall have the right to reject such coverage and that "[a] proviso limits or modifies the enacting clause, and should be strictly construed in accord with the general purpose of the enactment." 292 Ala. at 105,289 So.2d at 608. In the present case, where Lynette Nicholas, as a "named insured," did not reject the uninsured motorist coverage existing under the family policy, such coverage continued in force as to her, notwithstanding the later rejection of that coverage by Kurk Nicholas, Sr. Section 32-7-23 does not authorize one named insured to reject uninsured-motorist coverage on behalf of another named insured.
Nationwide cites Universal Underwriters Insurance Co. v. Thompson, *Page 461 776 So.2d 81 (Ala. 2000), McCullough v. Standard Fire Insurance Co. ofAlabama, 404 So.2d 637 (Ala. 1981), and Safeway Insurance Co. v.Hambrick, 723 So.2d 93 (Ala.Civ.App. 1998), as authority for the proposition that a signed, written rejection of uninsured-motorist coverage by one named insured is effective to remove uninsured-motorist coverage from the entire automobile policy. However, each of those cases is easily distinguishable. Thompson involved a garage policy issued to several named insureds. The insurance company provided the insureds with an "Elective Options Form," which provided boxes to be "checked" under different columns and headings to indicate rejection of uninsured-motorist coverage. Our supreme court held that, because the form was ambiguous, a question of fact existed as to whether the "checked" boxes on the form indicating a rejection of uninsured-motorist coverage except as to certain individuals or whether they indicated that such coverage was not rejected but that the amount of coverage for certain individuals was increased. Both McCullough and Hambrick involved insurance policies that did not provide any coverage (i.e., neither liability nor uninsured-motorist coverage) for the named insured's child.
Other jurisdictions have addressed the issue whether, when an insurance policy lists more than one individual as a named insured, a written rejection of uninsured-motorist coverage by one of the named insureds is effective as a rejection on behalf of all of the named insureds. InPlaster v. State Farm Mutual Automobile Insurance Co., 791 P.2d 813
(Okla. 1989), the Oklahoma Supreme Court answered a certified question from a federal district court on this issue. In Plaster, James Plaster and Patricia Plaster, both named insureds, obtained automobile insurance. However, only Mr. Plaster executed a written rejection of uninsured-motorist coverage. Their son, who was an "additional" insured under the policy, was killed in a one-car accident while riding as a passenger. In 1981, the Oklahoma Uninsured Motorist Statute, Okla. Stat. tit. 36, § 3636 (1981), provided:
 "(F) The named insured shall have the right to reject such uninsured motorist coverage in writing, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer."
The Plaster court stated:
 "Because Patricia L. Plaster is a `named insured', the only method provided by statute for waiver of uninsured motorist coverage is by written rejection, not by the written rejection of another `named insured', but by the written rejection of Patricia L. Plaster. The statute does not authorize Mr. Plaster to reject coverage for Mrs. Plaster when they are both named insureds. Failure of the insurance company to obtain a written rejection required by 36 O.S. 1981, § 3636[36-3636](F) resulted in the inclusion of uninsured motorist coverage as part of the policy by operation of law. Beauchamp v. Southwestern Nat. Ins. Co., 746 P.2d 673, 676 (Okla. 1987).
 "We therefore hold that where an automobile insurance policy lists more than one individual as a `named insured', a written rejection of uninsured motorist coverage by less than all named insureds is not a complete rejection of that coverage within the four corners of the policy. However, such partial rejection does operate to estop an individual named insured who signs the rejection *Page 462 
from asserting the uninsured motorist provisions of the policy."
791 P.2d at 814.
The Supreme Court of Iowa in Preferred Risk Insurance Co. v. Cooper,638 N.W.2d 717 (Iowa 2002), held that the wife, a named insured, did not reject uninsured/underinsured-motorist coverage under the family automobile policy and was entitled to that coverage despite the fact that her husband had declined such coverage. The wife was permanently injured and the parties' daughter was killed in an automobile collision. The trial court concluded that as a matter of law underinsured-motorist coverage must be provided to the wife because the policy included such coverage and she did not join in a subsequent declination of that existing coverage as required by Iowa's Uninsured Motorist Statute, Iowa Code § 516A.1 (1997). The Iowa Supreme Court stated:
 "In seeking reversal of the district court's judgment, [the insurer] relies on decisions from other jurisdictions, which have similar statutes, holding that in acquiring automobile insurance one spouse has the right to decline underinsured-motorist coverage on behalf of the other spouse. Those decisions are Messerly v. State Farm Mutual Automobile Insurance Co., 277 Ill. App.3d 1065, 214 Ill. Dec. 794, 662 N.E.2d 148, 149 (1996), and Hall v. Allstate Insurance Co., 53 Wash. App. 865, 770 P.2d 1082, 1083
(1989). The premise on which these cases were decided is that, if A relies on B to acquire insurance for A, A only receives the insurance for which B arranges.
 "We are convinced that the rationale of the Illinois and Washington appellate courts is flawed. If the insurance that is being acquired is subject to a statute mandating that the insurer include certain specified coverages in all policies unless expressly declined in writing by the named insured, a person relying on another to make him or her a named insured may reasonably expect that the coverages obtained will be those mandated by law. That is the conclusion reached by the Oklahoma Supreme Court in Plaster v. State Farm Mutual Automobile Insurance Co., 791 P.2d 813, 814-15 (Okla. 1989) (when statute requires written rejection by named insured, rejection by one insured was inoperative as to another insured who had not executed a written rejection).
 "There is another reason why the rationale of the Illinois and Washington appellate courts is inapposite. That rationale is not relevant here because the situation involves a rejection of existing insurance rather than the acquisition of new insurance. We agree with the district court's conclusion that, because [the wife] did not reject the underinsured motorist coverage existing under the family auto policy, that coverage continued in force as to her, notwithstanding [the husband's] later declination of such coverage."
638 N.W.2d at 719.
In Hall v. Allstate Insurance Co., 53 Wash. App. 865, 770 P.2d 1082
(1989), the wife brought an action, seeking a declaration that she was entitled to uninsured-motorist coverage despite her husband's waiver of such coverage. The Washington appellate court held that the husband had the right to waive such coverage for both himself and his wife. Hall, however, is distinguishable because Washington is a community-property state.[2] The wife argued that the Washington Uninsured *Page 463 
Motorist Statute manifested a "strong public policy in favor of protection of injured persons through [uninsured-/underinsured-motorist ("UIM")] coverage." 53 Wash. App. at 867, 770 P.2d at 1084. The court stated:
 "It is true that the legislature provided special treatment for this term of the insurance coverage by requiring it to be specifically rejected. However, if the legislature wished to mandate UIM coverage, it could have done so. Nothing in the statutory language suggests any change in or restriction on the normal principles of agency and community property management when dealing with waivers of UIM coverage."
Id.
Messerly v. State Farm Mutual Automobile Insurance Co.,277 Ill. App.3d 1065, 662 N.E.2d 148, 214 Ill. Dec. 794 (1996), is also distinguishable from the present case. In Messerly, the husband obtained automobile insurance on behalf of himself and his wife. Under Illinois law, a certain amount of uninsured-motorist coverage is required and the insurer is required to offer additional uninsured-motorist coverage to all named insureds under a policy. The husband declined such additional coverage. The wife was later involved in an accident and incurred damages in excess of the coverage her husband selected. The offer of the additional coverage was made at the time the husband and wife applied for insurance.
The dissent raises the issue whether Lynette Nicholas was entitled to $40,000 in damages. Nationwide has not raised this issue on appeal. Therefore, Nationwide is deemed to have waived any argument it might have raised with regard to the amount of damages recoverable by Lynette Nicholas.[3] Robino v. Kilgore, 838 So.2d 366 (Ala. 2002) and Boshellv. Keith, 418 So.2d 89 (Ala. 1982). In addition to Nationwide's having waived that argument, we note that the Missouri case cited by the dissent is distinguishable from the present case. In Livingston v. Omaha Property Casualty Insurance Co., 927 S.W.2d 444 (Mo.Ct.App. 1996), the mother sued the insurance company seeking compensation under her uninsured-motorist coverage because of the death of her daughter, who was struck and killed by an uninsured motorist. The daughter was not a named insured under the mother's policy, and, because the daughter owned her own automobile and was insured with another company, she was not covered under any other terms of the mother's policy. Uninsured-motorist coverage in wrongful-death actions is intended to provide indemnity for damages resulting from an *Page 464 
insured's wrongful death for persons who may be entitled to bring such an action on behalf of the insured. In Livingston, the daughter was not covered under the mother's policy, and, in fact, the mother had settled with the daughter's insurance company. Here, Kurk Nicholas, Jr., was covered under the Nicholases' policy.
In the present case, the Alabama Uninsured Motorist Statute provides that the "named insured" has the right to reject uninsured-motorist coverage. Both Lynette Nicholas and Kurk Nicholas, Sr., are named insureds. Lynette Nicholas did not reject uninsured-motorist coverage as is required by the Uninsured Motorist Statute; therefore, she is entitled to uninsured-motorist coverage under the terms of the uninsured-motorist provisions of the policy. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
CRAWLEY, J., concurs.
MURDOCK, J., concurs in the result.
THOMPSON, J., concurs in the result only.
PITTMAN, J., dissents.
[1] The underinsured driver was also insured by Nationwide, and it appears that the Nicholases were paid his policy limits of $25,000.
[2] Wash. Rev. Code § 26.16.030 (2002), provides, as it did in 1989, in pertinent part that "[e]ither spouse, acting alone, may manage and control community property."
[3] While Lynette Nicholas may have incorrectly styled her complaint as an individual claim, it is also properly styled as a representative claim on behalf of her son; moreover, it appears that "stacking" is permissible under § 32-7-23(c).
"The Uninsured Motorist Statute, [Ala.] Code 1975, § 32-7-23, absent rejection by the named insured, mandates uninsured motorist coverage for the protection of persons insured under a motor vehicle liability policy. As heretofore construed by this Court, the statute mandates stacking in the case of the named or designated insureds as well as relatives living in the same household where such persons are included in the policy's definition of `insureds' for purposes of liability. These persons are entitled to stack the available coverages because their right to coverage under the primary liability coverage is not limited to their use or occupancy of a vehicle insured under the policy. A clause limiting their rights of uninsured motorist coverage to the minimum coverage available on only one insured vehicle would be an unreasonable derogation of the mandate of the statute, because additional premium charges would not afford them any additional benefits."
Holloway v. Nationwide Mut. Ins. Co., 376 So.2d 690, 694-95 (Ala. 1979).