1 So.3d 996 (2008)
PROGRESSIVE SPECIALTY INSURANCE COMPANY
v.
Gerald GORE and Jeanette Gore.
1070491.
Supreme Court of Alabama.
June 27, 2008.
*997 R. Larry Bradford and Thomas C. Phelps III of Bradford & Sears, P.C., Birmingham, for appellant.
Candice J. Shockley of Holliman & Shockley, Pelham, for appellees.
PER CURIAM.
Progressive Specialty Insurance Company ("Progressive") appeals from a summary judgment in favor of Gerald Gore and his wife, Jeanette Gore, in a declaratory-judgment action commenced by Progressive to determine its obligation, if any, to pay uninsured-motorist benefits under an automobile policy issued to Gerald Gore. We affirm.

I. Factual Background
The dispositive facts are undisputed. On November 13, 2002, Jeanette Gore completed an application to purchase automobile insurance from Progressive. The application contemplated that the policy would be issued solely in the name of Gerald Gore, who was not present during the application process.
During the application process, Jeanette was presented with the following document (hereinafter referred to as "the rejection form"):
"REJECTION OF UNINSURED/UNDERINSURED MOTORIST COVERAGE
"I have been offered Uninsured/Underinsured Motorist Coverage and I reject the option to purchase any Uninsured/Underinsured Motorist Coverage. I understand that Uninsured/Underinsured Motorist Coverage would have protected me, my resident relatives, and occupants of a covered vehicle if any of us sustain bodily injury, including any resulting death, in an accident in which the owner or operator of a motor vehicle who is legally liable does not have insurance (an uninsured motorist) or does not have enough insurance (an underinsured motorist).
"I understand and agree that this rejection of Uninsured/Underinsured Motorist Coverage shall be binding on all persons insured under the policy, and that this rejection shall also apply to any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless a named insured submits a request to add the coverage and pays the additional premium."
The rejection form included a space for the "signature of the named insured." In that space, however, Jeanette signed her own name.
On November 15, 2002, Progressive issued a policy to Gerald as the only named insured. Both Gerald and Jeanette were listed on the policy as "drivers." The declarations stated that uninsured/underinsured-motorist coverage had been "rejected." The policy was in force on August 12, 2005.
On that date, Jeanette was injured when the automobile she was operating was struck by an uninsured driver. The Gores filed a claim with Progressive for uninsured-motorist ("UM") benefits based on Jeanette's injuries. Subsequently, Progressive commenced this action, seeking a judgment declaring that "Jeanette Gore validly executed the UM rejection in her individual capacity and as the agent for her husband in procuring the policy" and, consequently, that Progressive was not liable for UM benefits.
Progressive moved for a summary judgment. In their response to Progressive's motion, the Gores argued:
"The law in Alabama which applies to UM coverage mandates that only a named insured can reject [UM] coverage *998 under a policy of automobile liability insurance. [Progressive] can offer no proof whatsoever, that Gerald Gore, the only named insured under the policy issued by Progressive, rejected said coverage. Therefore, Gerald Gore is entitled to [UM] coverage under the policy, and [Jeanette Gore] is entitled to coverage as his spouse and as a listed driver under the policy."
The Gores requested that the trial court "deny the relief [sought] by Progressive, and ... enter an Order holding that [they] are entitled to [UM] coverage and benefits under the policy." The trial court entered a summary judgment so holding, and Progressive appealed.
The resolution of this appeal turns on the application of the Uninsured Motorist Statute, Ala.Code 1975, § 32-7-23(a), to the undisputed facts of this case. Section 32-7-23(a) provides, in pertinent part:
"(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto,... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage...."
(Emphasis added.)

II. Standard of Review
"Our standard of review is de novo. That is the standard by which we review the trial court's grant or denial of a summary-judgment motion, as well as the standard by which we review questions of law regarding statutory construction." Bishop v. Chilton County, 990 So.2d 287, 289 (Ala.2008). See Pinigis v. Regions Bank, 977 So.2d 446 (Ala.2007); Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342 (Ala.2006).

III. Discussion
"The Uninsured Motorist Statute..., absent rejection by the named insured, mandates uninsured motorist coverage for the protection of persons insured under a motor vehicle liability policy." Holloway v. Nationwide Mut. Ins. Co., 376 So.2d 690, 694 (Ala.1979) (emphasis added). Under this statute and well-established Alabama caselaw, any purported rejection or waiver of UM coverage by one who is not the named insured is invalid. Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816, 819 (Ala.2007) ("[I]f the named insured does not reject UM coverage, the insurer must provide UM coverage not only to the named insured, but also to any additional insureds."); Continental Cas. Co. v. Pinkston, 941 So.2d 926, 929 (Ala. 2006) ("[Section] 32-7-23, Ala.Code 1975, requires that every automobile-liability-insurance policy issued or delivered in Alabama provide uninsured/underinsured-motorist coverage with limits for bodily injury or death of at least $20,000 per person, unless the coverage is specifically rejected in writing by the named insured."); State Farm Mut. Auto. Ins. Co. v. Martin, 292 Ala. 103, 289 So.2d 606 (1974) (written rejection of UM coverage by the spouse of the named insured was ineffective to waive coverage for the named insured or for the couple's daughter, who was injured by an uninsured motorist); Nationwide Ins. Co. v. Nicholas, 868 So.2d 457 (Ala.Civ.App. *999 2003) (written rejection of UM coverage by one spouse, who was a named insured, was ineffective to waive coverage for the other spouse, who was also a named insured, or for the couple's son, who was killed by an uninsured motorist).
Progressive acknowledges, as it must, this well-established principle. However, relying on that portion of the rejection clause in which Jeanette purported to "agree that [her] rejection of [UM] Coverage [would] be binding on all persons insured under the policy," Progressive invites this Court to adopt an exception to this principle by construing the statute to allow a person who is not a named insured to reject coverage for the named insured as the latter's "agent." For that proposition, it cites cases from lower appellate courts in Kansas and Louisiana, namely, Ridgway v. Shelter Ins. Cos., 22 Kan. App.2d 218, 913 P.2d 1231 (1996), and Soileau v. Hartford Accident & Indem. Co., 182 So.2d 76 (La.Ct.App.1966). Citing authority for general principles of agency, Progressive argues that "[i]f Jeanette Gore had the authority to bind her husband into a policy of insurance with Progressive, [then she must have had] the authority to bind him on one particular term of the contract." Progressive's brief, at 14.
We need not decide whether, under our caselaw, general principles of agency would allow an individual to waive UM coverage by signing a rejection form as an agent for another, because Jeanette signed the rejection form in her own name, not in the name of the named insured. Our statute makes no provision for waiver by anyone other than the named insured. Section 32-7-23(a) flatly declares "that the named insured shall have the right to reject such coverage." (Emphasis added.) The purposes of 32-7-23(a) are to "assure that a person injured by an uninsured motorist will be able to recover the total amount of [her] damages and that the insurer will not be allowed to insert provisions in the policy limiting the insured's recovery." Star Freight, Inc. v. Sheffield, 587 So.2d 946, 957 (Ala.1991) (some emphasis added; some emphasis omitted). "`[A] person relying on another to make him or her a named insured may reasonably expect that the coverages obtained will be those mandated by law.'" Nicholas, 868 So.2d at 462 (quoting Preferred Risk Ins. Co. v. Cooper, 638 N.W.2d 717, 719 (Iowa 2002)). What Jeanette signed does not purport to be a waiver of UM coverage by the named insured. Instead, it merely purports to be a rejection of UM coverage by Jeanette herself, acting only in her individual capacity.

IV. Conclusion
Jeanette's execution of the rejection form was a nullity, and the purported waiver of UM coverage was void. For these reasons, the trial court did not err in entering a summary judgment holding that the Gores are entitled to UM coverage and benefits under the policy. That judgment is, therefore, affirmed.
AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SEE, J., concurs specially.
MURDOCK, J., concurs in the result.
SEE, Justice (concurring specially).
I concur fully in the main opinion. I write specially simply to note why I do not believe that Gerald Gore "signed" the uninsured/underinsured-motorist insurance-coverage waiver.
The pertinent portion of § 32-7-23, Ala. Code 1975, Alabama's Uninsured Motorist statute, provides:

*1000 "No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto ... under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage...."
(Emphasis added.) This Court has interpreted this statute to "require[ ] that every automobile-liability-insurance policy issued or delivered in Alabama provide uninsured/underinsured-motorist coverage with limits for bodily injury or death of at least $20,000 per person, unless the coverage is specifically rejected in writing by the named insured." Continental Cas. Co. v. Pinkston, 941 So.2d 926, 929 (Ala.2006). As the main opinion states, "[u]nder this statute and well-established Alabama caselaw, any purported rejection or waiver of [uninsured-motorist] coverage by one who is not the named insured is invalid." 1 So.3d at 998. Similarly, the main opinion notes that "[o]ur statute makes no provision for waiver by anyone other than the named insured." 1 So.3d at 999.
The Supreme Court of Rhode Island recently discussed what constitutes a "signature." Carrozza v. Carrozza, 944 A.2d 161 (R.I.2008). In that case, the question was the validity of a grantor's "signature" on a deed when the "signature" "was printed on the [deed] in separate block letters, rather than in cursive adjoining letters." Carrozza, 944 A.2d at 165. The court noted:
"Black's Law Dictionary defines the term `signature' as `A person's name or mark written by that person or at that person's direction.' Black's Law Dictionary 1415 (8th ed.2004). We are further persuaded by the more explicit entry in the dictionary's sixth edition, in which the term `signature' was defined quite broadly. `A signature may be written by hand, printed, stamped, typewritten, engraved, photographed, or cut from one instrument and attached to another....' Black's Law Dictionary 1381 (6th ed.1990). The validity of a signature, therefore, does not turn on the form of the mark; indeed any mark will suffice, as long as that mark is adopted as one's own."
944 A.2d at 195. See also Guam Election Comm'n v. Responsible Choices for All Adults Coal., 2007 Guam 20 ¶ 68 (2007) ("A `signature' is `1. A person's name or mark written by that person or at the person's direction....' (quoting Black's Law Dictionary 1387 (7th ed.1999))). This Court has reached similar conclusions with respect to a signature on a deed. See Loyd v. Oates, 143 Ala. 231, 233, 38 So. 1022, 1023 (1905) ("Moreover, this court has held... that, if a husband and wife appear before an officer and acknowledge their signatures to a conveyance, the conveyance is valid, although neither of them actually signed their names."); Lewis v. Watson, 98 Ala. 479, 483, 13 So. 570, 572 (1893) ("It follows ... that if the jury believed that Fletcher signed the sheriff's name to the deed ... at the instance and in the presence of the latter ... Holley acquired a perfect title to the land in question ... when that deed was executed.").
*1001 In the case before us, it is undisputed that the only name (or mark) that appears on the waiver is that of Jeanette Gore. Because Gerald Gore's name (or mark) does not appear on the waiver, he did not waive the uninsured/underinsured-motorist coverage.