# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Loretta Traynum and Leonard Traynum, Appellants,

v.

Cynthia Scavens and Progressive Direct Insurance Co., Respondents.

Appellate Case No. 2013-002797

————————

Appeal from Aiken County
Doyet A. Early, III, Circuit Court Judge

————————

Opinion No. 27629
Heard December 3, 2015 – Filed April 20, 2016

————————

**AFFIRMED**

————————

Blake A. Hewitt and John S. Nichols, both of Bluestein, Nichols, Thompson & Delgado, L.L.C., of Columbia, and Tom Young, Jr., of Law Offices of Tom Young, Jr., P.C., of Aiken, for Appellants.

J.R. Murphy and Wesley B. Sawyer, both of Murphy & Grantland, P.A., of Columbia, for Respondents.

David C. Marshall and R. Hawthorne Barrett, both of Turner Padget Graham & Laney, P.A., of Columbia, for Amicus Curiae, Property Casualty Insurers Association of America.

————————

**JUSTICE KITTREDGE:** Loretta Traynum and Leonard Traynum (collectively, Appellants) appeal the trial court's grant of summary judgment to Respondent Progressive Direct Insurance Co. (Progressive), arguing the trial court incorrectly held that Progressive made a meaningful offer of underinsured motorist (UIM) coverage via its website. We affirm.

## I.

In April 2007, Loretta Traynum (Traynum) purchased an automobile insurance policy from Progressive through Progressive's website. Instead of selecting one of the preset packages Progressive offered, all of which contained UIM coverage by default, Traynum created a custom package which did not include UIM coverage. Traynum also increased the preset deductibles for comprehensive and collision coverages. The result of these changes was a lower monthly premium. Traynum then electronically signed a form acknowledging Progressive offered her optional UIM coverage and that she rejected that coverage.

Thereafter, in November 2007, Traynum and Cynthia Scavens were involved in an automobile accident, from which Appellants claimed more than $175,000 in damages. Appellants brought claims against Scavens for negligence and loss of consortium, which were settled for $100,000, the limits of Scavens's liability coverage. As the settlement did not fully satisfy Appellants' damages, Appellants also brought a declaratory judgment action against Progressive claiming Progressive did not make a meaningful offer of UIM coverage to Traynum, as required by law, and asking the court to reform Traynum's policy to include UIM coverage in the amount of the policy's liability limits.[1]

Appellants and Progressive filed cross-motions for summary judgment. Progressive noted it made an offer of UIM coverage to Traynum on its website and Traynum electronically signed a form rejecting that offer, while Appellants argued the offer was insufficient and therefore Traynum's rejection of UIM coverage was ineffective. The trial court granted Progressive's motion for summary judgment, concluding that Progressive made a meaningful offer of UIM coverage to

---

[1] "If [an] insurer fails to comply with its duty to make a meaningful offer [of UIM coverage], the policy will be reformed by operation of law to include UIM coverage up to the limits of liability insurance carried by the insured." *Ray v. Austin*, 388 S.C. 605, 611, 698 S.E.2d 208, 212 (2010) (citing *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 405, 475 S.E.2d 758, 760 (1996)).

Traynum, which she knowingly rejected. Appellants contend this was error and ask this Court to reform Traynum's policy to include UIM coverage. We decline to do so.

## II.

### A.

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court . . . ." *Quail Hill, L.L.C. v. Cnty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (citing *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000)). "[A] trial court may grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 234, 692 S.E.2d at 505 (quoting Rule 56(c), SCRCP).

Appellants' claim against Progressive is entirely predicated upon the allegation that Progressive's offer of UIM coverage was inadequate. When there is no factual dispute about its content or form, whether an offer of UIM coverage is sufficient is a question of law. *See Wiegand v. U.S. Auto. Ass'n*, 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011). "Appellate courts may decide questions of law with no particular deference to the [trial] court's findings." *Wachovia Bank, N.A. v. Blackburn*, 407 S.C. 321, 328, 755 S.E.2d 437, 441 (2014) (citing *Verenes v. Alvanos*, 387 S.C. 11, 15, 690 S.E.2d 771, 772–73 (2010)).

### B.

In South Carolina, insurers must "offer, at the option of the insured, [UIM] coverage up to the limits of the insured liability coverage." S.C. Code Ann. § 38-77-160 (2015). In the seminal case of *State Farm Mutual Automobile Insurance Co. v. Wannamaker*, this Court held that "the statute mandates the insured to be provided with adequate information, and in such a manner, as to allow the insured to make an intelligent decision of whether to accept or reject the coverage." 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987). Under *Wannamaker*, for an offer of UIM coverage to be valid,

(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

*Id.* at 521, 354 S.E.2d at 556 (citing *Hastings v. United Pac. Ins. Co.*, 318 N.W.2d 849 (Minn. 1982)).  This amounts to a requirement that, to be valid, an offer of UIM coverage must be "a meaningful one." *Id.* at 522, 354 S.E.2d at 557.  "If the insurer fails to comply with its duty to make a meaningful offer, the policy will be reformed by operation of law to include UIM coverage up to the limits of liability insurance carried by the insured." *Ray v. Austin*, 388 S.C. 605, 611, 698 S.E.2d 208, 212 (2010) (citing *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 405, 475 S.E.2d 758, 760 (1996)).

After *Wannamaker*, the General Assembly enacted section 38-77-350 of the South Carolina Code as a safe-harbor provision, creating a conclusive presumption of a meaningful offer of UIM coverage under certain conditions.  *See, e.g.*, *id.* at 611, 698 S.E.2d at 212 (noting that compliance with section 38-77-350 creates "a presumption that a meaningful offer of UIM coverage has been made") (citing S.C. Code Ann. § 38-77-350(A)–(B) (2015))).  Subsection (A) requires the Department of Insurance (the Department) to promulgate a form for insurers to use when making the required offer of optional coverages to new applicants, which must include

> (1) a brief and concise explanation of the coverage;
> (2) a list of available limits and the range of premiums for the limits;
> (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;
> (4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages; [and]
> (5) the mailing address and telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

S.C. Code Ann. § 38-77-350(A)(1)–(5).  Subsection (B) states,

> If this form is signed by the named insured, after it has been
> completed by an insurance producer or a representative of the insurer,
> *it is conclusively presumed that there was an informed, knowing*
> *selection of coverage* and neither the insurance company nor an
> insurance agent is liable to the named insured or another insured
> under the policy for the insured's failure to purchase optional coverage
> or higher limits.

*Id.* § 38-77-350(B) (emphasis added).  Our precedents thus recognize that an
insurer can establish it made a meaningful offer of UIM coverage by proving *either*
it is entitled to the conclusive presumption of section 38-77-350(B) *or* it satisfied
the requirements of *Wannamaker*.  *See, e.g.*, *Ray*, 388 S.C. at 612, 698 S.E.2d at
212 ("Even where the insurer is not entitled to the statutory presumption that a
meaningful offer of UIM coverage was made, the insurer can still demonstrate that
a meaningful offer of UIM coverage was made to the insured under *Wannamaker*."
(citing *Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253, 264, 626 S.E.2d 6, 12
(2005))).

## C.

Appellants acknowledge they are not contesting the content of Progressive's offer
of UIM coverage, but rather the method by which the offer was communicated to
and rejected by Traynum through Progressive's website.  Because the transaction
occurred online, it is governed by South Carolina's version of the Uniform
Electronic Transactions Act (the UETA).[2]

Under the UETA, "[a]n electronic signature satisfies a law requiring a signature."
S.C. Code Ann. § 26-6-70(D) (2007).  The UETA also allows offers to be
communicated online, declaring that

> [i]f parties agree to conduct a transaction by electronic means and a
> law requires a person to provide, send, or deliver information in

---

[2] S.C. Code Ann. §§ 26-6-10 to -210 (2007 & Supp. 2015).

writing to another person, the requirement is satisfied if the
information is provided, sent, or delivered in an electronic record
capable of retention by the recipient at the time of receipt.

*Id.* § 26-6-80(A) (2007).  Moreover, the UETA endorses automated transactions
between an "electronic agent"[3] of a company and a consumer:

> In an automated transaction:
>
> . . . .
>
> . . .  a contract may be formed by the interaction of an electronic
> agent and an individual, . . . including by an interaction in which the
> individual performs actions that the individual is free to refuse to
> perform and which the individual knows or has reason to know will
> cause the electronic agent to complete the transaction or performance
> . . . .

*Id.* § 26-6-140 (2007).

Below, we analyze Appellants' arguments consistently with the purpose and
provisions of the UETA.

## III.

Appellants contend the trial court erred in granting Progressive summary judgment
because Progressive's website was confusing and not designed to effectively
communicate the offer of UIM coverage to Traynum.  Therefore, Appellants argue,
Progressive was not entitled to a presumption of a meaningful offer of UIM
coverage and Traynum's policy should be reformed to include that coverage.  We
disagree.

## A.

Progressive maintains records of all online transactions that result in a purchase,
which are stored as a series of images that preserve Progressive's website exactly

---

[3] An "electronic agent" is defined as "a computer program or an electronic or other
automated means used independently to initiate an action or respond to electronic
records or performances in whole or in part, without review or action by an
individual."  *Id.* § 26-6-20(6) (2007).

as it appeared to the purchaser, screen by screen. Progressive also maintains records of all electronic signatures, making it possible to review everything Traynum saw and signed when she purchased the insurance policy on Progressive's website.

These images indicate that Traynum rejected the preset packages Progressive offered and chose instead to create a custom insurance package without UIM coverage. The preset packages all included UIM coverage, and it is uncontroverted that Progressive recommends consumers purchase a policy with UIM coverage equal to the policy's liability limits. The website also included hyperlinks to explanations of the various types of coverage, including UIM, none of which Traynum clicked.

After choosing her coverage, Traynum provided her electronic signature three times. The second of those signatures was below a document entitled "Offer of additional uninsured motorist coverage and optional [UIM] coverage" (the Offer Form). Traynum filled out the "Policyholder Electronic Signature" below the Offer Form, which stated,

> I, (LORETTA TRAYNUM), represent that I am the person whose name appears on the signature line of the document presented above, and that I viewed the document at the recommended text size.
> I acknowledge and agree to the statements, terms[,] and conditions in the document above, and that by typing my name below and clicking the "Continue" button, I am electronically signing the document. This will have the same legal effect as signing the document with a written signature and shall be valid evidence of my intent and agreement to be bound.

The Offer Form reflected and confirmed Traynum's rejection of additional uninsured motorist coverage and optional UIM coverage. By completing the Policyholder Electronic Signature, Traynum also consented to her signature of the "Applicant's acknowledgement," which was contained in the Offer Form and stated,

> By my signature, I acknowledge that I have read—or I have had read to me—the above explanations and offers of additional uninsured motorist coverage and optional [UIM] coverage. . . .
> My signature below further acknowledges that I understand the

coverages as they have been explained to me, and the type and amounts of coverage marked on the preceding pages have been selected by me. This is the type and amount of insurance coverage I wish to purchase.[4]

In granting Progressive summary judgment, the trial court found that the Offer Form contained the information required by section 38-77-350(A). The trial court further held that, pursuant to the UETA, Progressive effectively communicated the Offer Form to Traynum, who effectively signed it. Therefore, the trial court held Progressive was entitled to the conclusive presumption of section 38-77-350(B).

**B.**

Appellants argue that Progressive is not entitled to the presumption of section 38-77-350(B) because Progressive's website communicated the Offer Form in a confusing and misleading way. Appellants also argue there was not strict compliance with section 38-77-350(B) because there was no meaningful interaction between Traynum and Progressive, as is contemplated by the statute's requirement that a form offering UIM coverage be "completed by an insurance producer or a representative of the insurer." Therefore, according to Appellants, allowing Progressive to utilize the statute's conclusive presumption would violate the principles behind section 38-77-350 and *Wannamaker*.[5]

---

[4] Traynum did not personally type her name on the signature line under the acknowledgment, but the form and signature were completed automatically based upon Traynum's earlier selections. Notwithstanding Traynum's signature, she never read the Offer Form.

[5] As already mentioned, Appellants are not contesting the Offer Form's content, but the method by which the Offer Form was communicated to and completed by Traynum. As the trial court correctly noted, the Offer Form Traynum signed was essentially identical to the form promulgated by the Department, which has been held to satisfy the requirements of section 38-77-350(A). *See, e.g.*, *Butler*, 323 S.C. at 408, 475 S.E.2d at 761 (noting the court of appeals had previously found the Department-created form satisfied the requirements of section 38-77-350 (quoting *Osborne v. Allstate Ins. Co.*, 319 S.C. 479, 487, 462 S.E.2d 291, 295 (Ct. App. 1995)) (citing S.C. Code Ann. §§ 38-77-160, -350)), *superseded by statute on other grounds*, Act of July 2, 1997, No. 154, § 3, 1997 S.C. Acts 931, 950–51 (codified as amended at S.C. Code Ann. § 38-73-470 (2015)), *as recognized in*

We agree with the trial court that the method by which Progressive communicated the offer of UIM coverage to Traynum and obtained Traynum's signature complied with section 38-77-350. Under the UETA, Traynum's electronic signature was as effective as a handwritten signature. *See* S.C. Code Ann. § 26-6-70(D). Progressive's online communication of the offer of UIM coverage was effective because Traynum agreed to interact with Progressive electronically by choosing to purchase insurance through Progressive's website and she had the ability to download and save or print the Offer Form. *See id.* § 26-6-80(A). Finally, despite Appellants' assertion that there was no meaningful interaction between Traynum and Progressive, the UETA, as already noted, expressly endorses this kind of transaction. *See id.* § 26-6-140. Progressive's website acted as the company's electronic agent, completing the Offer Form based on Traynum's selections of coverage and presenting it to Traynum in a format that was easily viewable, printable, and savable.

We thus find, based on the evidence in the record, that Progressive is entitled to the conclusive presumption of a meaningful offer of UIM coverage provided by section 38-77-350. Traynum rejected the recommended preset coverage packages, all of which included UIM coverage, instead choosing to create a customized package and decline UIM coverage. Appellants cannot now invoke the fact Traynum did not avail herself of the opportunity to read the Offer Form and the detailed description of UIM coverage it contained to defeat the statutory presumption.

We also note that the ability to purchase insurance online benefits consumers by allowing them to shop from the comfort of their own homes and avoid the time constraints and pressures associated with face-to-face interactions with sales agents. We therefore decline to add to the statutory requirements of section 38-77-350 and frustrate the purpose of the UETA by judicially engrafting an additional burden onto those transactions. Our law requires insurers to meaningfully offer UIM coverage and, if they comply with section 38-77-350's mandates, creates a conclusive presumption such an offer was made. Appellants cannot escape this fact merely because Traynum purchased insurance online.

---

*Moody v. Dairyland Ins. Co.*, 354 S.C. 28, 31–32, 579 S.E.2d 527, 529 (Ct. App. 2003).

Moreover, having made a statutorily compliant offer, consideration of *Wannamaker* is unnecessary. *See, e.g.*, *Grinnell Corp. v. Wood*, 389 S.C. 350, 357, 698 S.E.2d 796, 799 (2010) (noting that if an insurer offers UIM coverage on a form that satisfies the requirements of section 38-77-350(A), "section 38-77-350(B) provides a *conclusive* presumption in favor of the insurer that the insured made a knowing waiver of the option to purchase additional coverages" and *Wannamaker* is a fallback position insurers may resort to if an offer does not comply with section 38-77-350 (emphasis added)); *cf. Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 307, 676 S.E.2d 700, 706 (2009) (noting resolution of a case on one ground makes consideration of remaining issues unnecessary); *Duvall v. S.C. Budget & Control Bd.*, 377 S.C. 36, 42, 659 S.E.2d 125, 128 (2008) ("The Court must presume the Legislature intended its statutes to accomplish something and did not intend a futile act." (citing *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998))).

## IV.

For the reasons discussed above, we affirm the trial court's grant of summary judgment to Progressive.

**AFFIRMED.**

**PLEICONES, C.J., BEATTY, HEARN, JJ., and Acting Justice Jean H. Toal, concur.**