**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Progressive Northern Insurance Co., Respondent,

v.

Brandon Lawrence and Ashley Outlaw, Defendants,

of whom Brandon Lawrence is the Appellant and Ashley Outlaw is a Respondent.

Appellate Case No. 2020-001245

Appeal From Horry County
Clifton Newman, Circuit Court Judge

Unpublished Opinion No. 2024-UP-127
Heard October 3, 2023 – Filed April 17, 2024

**AFFIRMED**

William Vincent Josephs, III, of Josephs Law Firm, of Loris, and Jeffrey Edwin Johnson, of Jeff Johnson Attorney at Law L.L.C., of Conway, both for Appellant.

Susan Drake DuBose, of Baker Ravenel & Bender, LLP, of Columbia, for Respondent.

**PER CURIAM:**  In this declaratory judgment action, Brandon Lawrence appeals the trial court's order finding Progressive Northern Insurance Co. (Progressive) made a valid, meaningful offer of underinsured motorist (UIM) coverage to his agent, Ashley Outlaw.  On appeal, Lawrence argues (1) Outlaw did not act as his agent when she signed the UIM coverage rejection form and (2) Progressive failed to make a meaningful offer of UIM benefits.  We affirm.

## FACTS/PROCEDURAL HISTORY

From 2008 to 2013, Lawrence and Outlaw lived together in the same house with their son; they never married.  They split the household expenses, but Outlaw paid the bills and took care of any insurance needs.  On August 19, 2009, Outlaw purchased an insurance policy from Progressive to cover Lawrence's motorcycle, after he instructed her to do so; however, Lawrence did not discuss obtaining UIM coverage with Outlaw.  Additionally, Lawrence did not read the policy, did not have any involvement in obtaining the policy, and did not have any contact with Progressive.

The application for the insurance policy was mailed to Lawrence and Outlaw.  It listed Outlaw as "Married" and as an "Insured" and Lawrence as "Married" and as Outlaw's "Spouse."  On September 5, 2009, Outlaw signed the application form and rejected Progressive's offer of UIM coverage.  Outlaw paid the premium for the policy, and Lawrence reimbursed her.

In May 2013, Lawrence was involved in a motorcycle accident.  On August 12, 2016, Progressive filed a declaratory judgment action and sought a determination that UIM coverage was offered to Lawrence through his agent, Outlaw, and that Lawrence was bound by Outlaw's rejection of UIM coverage.  Lawrence's answer sought to reform the policy to include UIM coverage.  On October 18, 2017, this action was tried based on the parties' trial briefs and exhibits, the depositions of Lawrence and Outlaw, and the live testimony of Lawrence.  The parties agreed the facts were not in dispute.

The trial court found Lawrence was bound by Outlaw's rejection of UIM coverage because Lawrence appointed Outlaw as his agent to obtain the policy.  In support of its determination, the trial court's order relied on *Nationwide Mutual Insurance Company v. Prioleau*[1]  and found "Lawrence testified in his deposition and at trial that he knew Outlaw was getting insurance; that he asked her to do so; and that she had his permission to do so."  Additionally, the order found that Progressive's offer

---

[1] 359 S.C. 238, 597 S.E.2d 165 (Ct. App. 2004).

of UIM coverage was meaningful and met "all four elements of the *Wannamaker*[2] test."

Subsequently, Lawrence moved to alter or amend the trial court's order pursuant to Rule 59(e), SCRCP. He argued the trial court erred by failing to reform his policy to include UIM coverage because the insurance application did not contain a space for him to sign; thus, UIM coverage was not offered to him. Additionally, he averred he did not reject UIM coverage; therefore, such coverage must automatically be added to the policy by law. The trial court denied Lawrence's motion, and this appeal followed.

## ISSUES ON APPEAL

I.   Did the trial court err in granting Progressive declaratory relief by finding Outlaw exercised the law of agency to reject UIM benefits on behalf of Lawrence?

II.  Did the trial court err in granting Progressive declaratory relief by finding Progressive made a meaningful offer of UIM coverage benefits to Lawrence as required by section 38-77-160 of the South Carolina Code (2015)?

## STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Prioleau*, 359 S.C. at 241, 597 S.E.2d at 167.

> As the underlying issue in the present case involves determination of coverage under an insurance policy, the action is at law. In an action at law, tried without a jury, the trial judge's factual findings will not be disturbed on appeal unless a review of the record reveals there is no evidence which reasonably supports the judge's findings.

*Id.* (citation omitted). "'When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts. In such cases, the appellate court is not required to defer to the trial court's legal conclusions.'" *Id.* at 241–42, 597 S.E.2d at 167 (quoting *Allstate Ins. Co. v. Estate of Hancock*, 345 S.C. 81, 84, 545 S.E.2d 845, 846 (Ct. App. 2001)).

---

[2] *State Farm Mut. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987).

**LAW/ANALYSIS**

**I.      Agency**

Lawrence argues Outlaw did not act as his agent when she signed the rejection form because she "only signed for herself as a named insured . . . ."  He contends there is no indication on the rejection form that she signed on his behalf and that this case is similar to *Progressive Insurance Company v. Gore.*[3]

"It is well-settled that the relationship of agency between a husband and wife is governed by the same rules which apply to other agencies, and no presumption arises from the mere fact of the marital relationship that one spouse is acting as agent for the other."  *Prioleau*, 359 S.C. at 242, 597 S.E.2d at 168.  "However, the relationship of agency need not depend upon express appointment and acceptance thereof.  Rather, an agency relationship may be, and frequently is, implied or inferred from the words and conduct of the parties and the circumstances of the particular case."  *Id.*

> The law creates the relationship of principal and agent if the parties, in the conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts, and if, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency.

*Id.* (quoting *Crystal Ice Co. of Columbia v. First Colonial Corp.*, 273 S.C. 306, 309, 257 S.E.2d 496, 497 (1979)).

In *Prioleau*, an application for automobile insurance was completed in the names of a husband and wife; however, only the husband signed the application.  *Id.* at 240, 597 S.E.2d at 166.  Upon completing the application, the husband was presented with a form for optional UIM coverage, which he rejected.  *Id.* at 240, 597 S.E.2d at 166–67.  The wife sought to reform the insurance contract to include UIM coverage following an automobile accident.  *Id.* at 240, 257 S.E.2d at 167.  This court held an implied agency relationship existed between the husband and

---

[3] 1 So. 3d 996 (Ala. 2008).

wife and the husband's rejection of UIM coverage on the wife's behalf was valid. *Id.* at 244, 597 S.E.2d at 168. In support of its holding, this court noted the wife knew the husband had to obtain insurance and that he was "going to get some insurance." *Id.* at 243, 597 S.E.2d at 168. Furthermore, this court stated the husband and wife "by their conduct, placed themselves in such a position as required an agency relationship to be inferred by the courts, and the only reasonable conclusion from the facts of this case is that an implied agency existed between [them]. Otherwise, [the wife] is repudiating the very contract under which she seeks reformation." *Id.*

The *Prioleau* opinion acknowledged a case by the Appellate Court of Illinois and stated it would be inconsistent to allow a spouse to argue:

> (1) she was covered by the policy procured exclusively by her husband but admittedly for her benefit; (2) she was entitled to recover from [the insurance company] under the terms of the policy; but (3) with respect to one aspect of the policy, her husband acted without her authority and his decision cannot bind her. To allow such an argument would permit [the wife] to accept the benefit of the bargain her husband made on her behalf but not the burden.

*Id.* (quoting *Messerly v. State Farm Mut. Auto. Ins. Co.*, 662 N.E.2d 148, 151 (1996)).

In *Gore*, a wife completed an application for automobile insurance for a policy that "would be issued solely in the name of [her husband], who was not present during the application process." *Gore*, 1 So. 3d at 997. During the application process, the wife completed a form that rejected additional UIM coverage; however, she signed her own name and not that of her husband. *Id.* The Supreme Court of Alabama stated that "any purported rejection or waiver of U[I]M coverage by one who is *not* the named insured is *invalid*" and held wife's rejection of such coverage was void because she "signed the rejection form *in her own name*, not in the name of the named insured." *Id.* at 998–99 (emphasis in original).

We hold an agency relationship existed between Lawrence and Outlaw and that Outlaw's rejection of UIM coverage binds Lawrence. *See Prioleau*, 359 S.C. at 242, 597 S.E.2d at 168 ("[T]he relationship of agency need not depend upon express appointment and acceptance thereof. Rather, an agency relationship may be, and frequently is, implied or inferred from the words and conduct of the parties

and the circumstances of the particular case.").  Outlaw regularly took care of paying the bills and insurance premiums and was instructed by Lawrence to purchase insurance for his motorcycle.  Although Lawrence stated he assumed Outlaw would purchase UIM coverage, he did not discuss such optional coverage with her, read the policy, check to see if the policy included UIM coverage, or have any contact with Progressive himself.  Additionally, the policy listed Outlaw and Lawrence as husband and wife and both as named insureds.  Thus, Lawrence gave Outlaw the authority to obtain the insurance policy, and he is bound by Outlaw's rejection of UIM coverage.  To hold otherwise would allow Lawrence to benefit from Outlaw's procurement of the policy but not be bound by her rejection of UIM coverage.  Such an arrangement was rejected in *Prioleau.  See id.* at 243, 597 S.E.2d at 168 (holding a husband and wife "by their conduct, placed themselves in such a position as required an agency relationship to be inferred by the courts, and the only reasonable conclusion from the facts of this case is that an implied agency existed between [them]. Otherwise, [the wife] is repudiating the very contract under which she seeks reformation"); *see also Messerly*, 662 N.E.2d at 151.

Additionally, Lawrence's argument that this case is similar to *Gore* is unavailing.  Unlike *Gore*, both Outlaw and Lawrence are named insureds.  *See Gore*, 1 So. 3d at 997 (noting a wife completed an application for automobile insurance for a policy that "would be issued solely in the name of [her husband]"); *id.* at 998–99 (holding "any purported rejection or waiver of U[I]M coverage by one who is *not* the named insured is *invalid*").  Accordingly, we hold an agency relationship existed between Lawrence and Outlaw in which she effectively rejected the UIM coverage on his behalf.

## II.    Meaningful Offer of UIM Coverage

Next, Lawrence argues Progressive failed to make a meaningful offer of UIM benefits because the application did not contain a space for him to sign.  He asserts that because Progressive mailed the application, such a signature space should be required to "direct [his] attention to read the Application and forms."  Furthermore, he avers that while a meaningful offer was made to Outlaw, "there is no indication that the offer to accept or reject additional coverage was made to [him]."  Lawrence contends that since he did not sign the rejection form, "Progressive is required by law to add the optional underinsured motorist coverage."  Additionally, Lawrence argues this case is similar to *Dewart v. State Farm Mutual Insurance*

*Company*[4] and "an intelligible explanation of coverage" was not made to him because the cover page of the application was only addressed to Outlaw.

Automobile insurance carriers must "offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage . . . ." S.C. Code Ann. § 38-77-160 (2015). "The insurer bears the burden of establishing it made a meaningful offer of UIM coverage*." Bower v. Nat'l Gen. Ins. Co.*, 351 S.C. 112, 116, 569 S.E.2d 313, 315 (2002). "If an insurer fails to make a meaningful offer, the policy will be reformed by operation of law to include UIM coverage up to the insured's liability limits." *Id.* In *Wannamaker*, our supreme court stated that for an offer of UIM coverage to be valid and meaningful,

> (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

291 S.C. at 521, 354 S.E.2d at 556.

"After *Wannamaker*, the General Assembly enacted section 38-77-350 of the South Carolina Code (2015) as a safe-harbor provision, creating a conclusive presumption of a meaningful offer of UIM coverage under certain conditions." *Traynum v. Scavens*, 416 S.C. 197, 202, 786 S.E.2d 115, 118 (2016). Subsection 38-77-350(A) lists requirements that the forms, provided by insurers, must include when offering UIM coverage. It provides:

> The form, at a minimum, must provide for each optional coverage required to be offered: (1) a brief and concise explanation of the coverage; (2) a list of available limits and the range of premiums for the limits; (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires; (4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages; (5) the mailing address and

---

[4] 296 S.C. 150, 370 S.E.2d 915 (Ct. App. 1988).

telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

§ 38-77-350(A). Subsection (B) adds:

If this form is signed by the named insured, after it has been completed by an insurance producer or a representative of the insurer, it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor an insurance agent is liable to the named insured or another insured under the policy for the insured's failure to purchase optional coverage or higher limits.

§ 38-77-350(B). "Our precedents thus recognize that an insurer can establish it made a meaningful offer of UIM coverage by proving *either* it is entitled to the conclusive presumption of section 38-77-350(B) or it satisfied the requirements of *Wannamaker*." *Traynum*, 416 S.C. at 203, 786 S.E.2d at 118 (emphasis in original).

In *Dewart*, the plaintiff sought to reform her insurance contract to include UIM coverage. 296 S.C. at 151, 370 S.E.2d at 915. "In May, 1984, [the plaintiff] purchased automobile liability insurance for her Volkswagen automobile from a State Farm agent[; however, t]he insurance application she signed contained no explanation of underinsured motorist coverage." *Id.* at 151–52, 370 S.E.2d at 916. The plaintiff "did not speak to the agent about her coverage [or pay an] additional premium for underinsured motorist coverage and her policy did not include it." *Id.* This court held an intelligible explanation of UIM coverage, as required by *Wannamaker*, was not made, stating:

[The UIM notice did] not even use the words "underinsured motorist" or "underinsured motor vehicle." Instead it refers only to "coverage W" with no explanation of what coverage W is. To obtain an explanation of underinsured motorist coverage, the insured must read the separate insert mailed with the renewal notice. There, under a heading "About Coverage W, Underinsured Motor Vehicle," is a brief paragraph defining the coverage. Nothing printed on the premium

renewal notice directs the insured to read this critical information in the insert.

*Id.* at 154, 370 S.E.2d at 917. This court reasoned,

> [B]ills received in the mail are often accompanied by leaflets, brochures, booklets, or other insertions known as 'junk mail.' . . . Placing critical information in two documents, without directing the insured to read both, was not a method reasonably calculated to draw the insured's attention to the nature of the offer.

*Id.* at 155, 370 S.E.2d at 917–18.

Initially, we find Lawrence's argument that *Dewart* is similar to the present case is not persuasive. Unlike *Dewart*, Progressive's application included the words "Underinsured Motorist Coverage" and several paragraphs that explained what such coverage entailed. Additionally, the information about UIM coverage offered by Progressive was not found in a separate form as it was in *Dewart*. Instead, the UIM information and rejection form was included within the main application that Outlaw received and signed.

Next, we hold Progressive made a meaningful offer of UIM coverage to Lawrence's agent, Outlaw. *See* § 38-77-160 (providing that automobile insurance carriers must "offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage"); *Bower*, 351 S.C. at 116, 569 S.E.2d at 315 ("The insurer bears the burden of establishing it made a meaningful offer of UIM coverage."). Lawrence contends Progressive failed to make a meaningful offer of insurance due to its failure to include a second signature line on the application in violation of section 38-77-350(B). *See* § 38-77-350(B) (stating that once a named insured signs a UIM rejection form, "it is conclusively presumed that there was an informed, knowing selection of coverage and the insurance company is not liable for the named insured's failure to purchase additional coverage"). However, Progressive satisfied the meaningful offer requirement through the test promulgated by *Wannamaker*. *See Traynum*, 416 S.C. at 203, 786 S.E.2d at 118 ("Our precedents thus recognize that an insurer can establish it made a meaningful offer of UIM coverage by proving *either* it is entitled to the conclusive presumption of section 38-77-350(B) or it satisfied the requirements of *Wannamaker*."); *Wannamaker*, 291 S.C. at 521, 354 S.E.2d at 556 (providing the meaningful offer requirements are: "(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the

insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium").

First, Progressive's offer of UIM coverage was made through a form it sent to Lawrence by mail.  This court previously noted the practice of mailing an offer of UIM coverage to the insured to be a "reasonable method of communicating with the insured about an important business transaction." *Dewart*, 296 S.C. at 153–54, 370 S.E.2d at 917.  Accordingly, Progressive satisfied the first prong of the test.  Second, Progressive's offer of UIM coverage specifically outlined the limits: "$25,000/$50,000/$25,000" or "$50,000/$100,000/$50,000."  Third, Progressive intelligibly advised Outlaw, who acted as Lawrence's agent, of the UIM coverage.  Outlaw stated in her deposition that she received every page of the application and she signed the "Applicant's Acknowledgment" on the final page.  Outlaw had experience purchasing insurance in the past by regularly handling the insurance needs of the household, and she stated that she compared the Progressive policy to the types of coverage Lawrence had on his other vehicles.  *See Croft v. Old Republic Ins. Co.*, 365 S.C. 402, 420, 618 S.E.2d 909, 918 (2005) ("[E]vidence of the insured[']s knowledge or level of sophistication is relevant and admissible when analyzing, under *Wannamaker*, whether an insurer intelligibly advised the insured of the nature of the optional UM or UIM coverage.").  Fourth, Progressive's application form discussed additional coverage options that were available to Lawrence, such as UIM coverage.  It stated that if Lawrence chose to purchase additional coverage, he would be "required to pay an additional premium for each of these coverages."

Based on the foregoing, we hold the trial court did not err in granting Progressive declaratory judgment.

**CONCLUSION**

Accordingly, the trial court's order is

**AFFIRMED.**

**WILLIAMS, C.J., and MCDONALD and VERDIN, JJ., concur.**